243 U.S. 210 (1917)
HAWKINS
v.
BLEAKLY, AUDITOR OF THE STATE OF IOWA, ET AL.
No. 35.
Supreme Court of United States.
Submitted January 24, 1916.
Restored for reargument November 13, 1916.
Reargued December 20, 1916.
Decided March 6, 1917.
APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.
*211 Mr. Robert Ryan, with whom Mr. James P. Hewitt, Mr. R. Ryan and Mr. F.G. Ryan were on the brief, for appellant.
Mr. Henry E. Sampson, Assistant Attorney General of the State of Iowa, with whom Mr. George Cosson, Attorney General of the State of Iowa, and Mr. John T. Clarkson were on the briefs, for appellees.
Restored to docket for reargument November 13, 1916.
MR. JUSTICE PITNEY delivered the opinion of the court.
This is a suit in equity, brought by appellant in the United States District Court, to restrain the enforcement of an act of the General Assembly of the State of Iowa, approved April 18, 1913, relating to employers' liability *212 and workmen's compensation; it being c. 147 of Laws of Iowa, 35 G.A.; embraced in Iowa Code, Supp. of 1913, § 2477m. The bill sets forth that complainant is an employer of laborers within the meaning of the act, but has rejected its provisions, alleges that the statute is in contravention of the federal and state constitutions, etc., etc. A motion to dismiss was sustained by the District Court (220 Fed. Rep. 378), and the case comes here by direct appeal, because of the constitutional question, under § 238, Jud. Code.
Since the decision below, the Supreme Court of Iowa, in an able and exhaustive opinion, has sustained the act against all constitutional objections, at the same time construing some of its provisions. Hunter v. Colfax Consolidated Coal Co., 154 N.W. Rep. 1037; 157 N.W. Rep. 145. Hence no objection under the state constitution is here pressed, and we of course accept the construction placed upon the act by the state court of last resort.
As to private employers, it is an elective workmen's compensation law, having the same general features found in the recent legislation of many of the States, sustained by their courts. See Opinion of Justices, 209 Massachusetts, 607; Young v. Duncan, 218 Massachusetts, 346; Borgnis v. Falk Co., 147 Wisconsin, 327; State, ex rel. Yaple, v. Creamer, 85 Ohio St. 349; Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571; Sexton v. Newark Dist. Tel. Co., 84 N.J.L. 85; 86 N.J.L. 701; Deibeikis v. Link-Belt Co., 261 Illinois, 454; Crooks v. Tazewell Coal Co., 263 Illinois, 343; Victor Chemical Works v. Industrial Board, 274 Illinois, 11; Mathison v. Minneapolis Street Ry. Co., 126 Minnesota, 286; Shade v. Cement Co., 92 Kansas, 146; 93 Kansas, 257; Sayles v. Foley (R.I.), 96 Atl. Rep. 340; Greene v. Caldwell, 170 Kentucky, 571; Middleton v. Texas Power & Light Co. (Tex.), 185 S.W. Rep. 556. The main purpose of the act is to establish, in all employments except those of household servants, farm laborers, and casual employees, *213 a system of compensation according to a prescribed schedule for all employees sustaining injuries arising out of and in the course of the employment and producing temporary or permanent disability, total or partial, and, in case of death resulting from such injuries, a contribution towards the support of those dependent upon the earnings of the employee; the compensation in either case to be paid by the employer in lieu of other liability, and acceptance of the terms of the act being presumed unless employer or employee gives notice of an election to reject them. To this main purpose no constitutional objection is raised, the attack being confined to particular provisions of the law.
Some of appellant's objections are based upon the ground that the employer is subjected to a species of duress in order to compel him to accept the compensation features of the act, since it is provided that an employer rejecting these features shall not escape liability for personal injury sustained by an employee arising out of and in the usual course of the employment because the employee assumed the risks of the employment, or because of the employee's negligence unless this was willful and with intent to cause the injury or was the result of intoxication, or because the injury was caused by the negligence of a co-employee. But it is clear, as we have pointed out in New York Central R.R. Co. v. White, decided this day, ante, 188, that the employer has no vested right to have these so-called common-law defenses perpetuated for his benefit, and that the Fourteenth Amendment does not prevent a State from establishing a system of workmen's compensation without the consent of the employer, incidentally abolishing the defenses referred to.
The same may be said as to the provision that in an action against an employer who has rejected the act it shall be presumed that the injury was the direct result of his negligence, and that he must assume the burden of *214 proof to rebut the presumption of negligence. In addition, we may repeat that the establishment of presumptions, and of rules respecting the burden of proof, is clearly within the domain of the state governments, and that a provision of this character, not unreasonable in itself and not conclusive of the rights of the party, does not constitute a denial of due process of law. Mobile, Jackson & Kansas City R.R. Co. v. Turnipseed, 219 U.S. 35, 42.
Objection is made to the provision in § 3, that where an employee elects to reject the act he shall state in an affidavit who, if anybody, requested or suggested that he should do so, and if it be found that the employer or his agent made such a request or suggestion, the employee shall be conclusively presumed to have been unduly influenced, and his rejection of the act shall be void. Passing the point that appellant is an employer, and will not be heard to raise constitutional objections that are good only from the standpoint of employees (Hatch v. Reardon, 204 U.S. 152, 160; Rosenthal v. New York, 226 U.S. 260, 271; Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 544; Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576; Hendrick v. Maryland, 235 U.S. 610, 621;) it is sufficient to say that the criticised provision evidently is intended to safeguard the employee from all influences that might be exerted by the employer to bring about his dissent from the compensation features of the act. The lawmaker no doubt entertained the view that the act was more beneficial to employees than the common-law rules of employer's liability, and that it was highly improbable an employee would reject the new arrangement of his own free will. The provision is a permissible regulation in aid of the general scheme of the act.
It is said that there is a denial of due process in that part of the act which provides for the adjustment of the compensation where the employer accepts its provisions. In case of disagreement between an employer and an *215 injured employee, either party may notify the Industrial Commissioner, who thereupon shall call for the formation of an arbitration committee consisting of three persons, with himself as chairman. The committee is to make such inquiries and investigations as it shall deem necessary, and its report is to be filed with the Industrial Commissioner. If a claim for review is filed, the commissioner, and not the committee, is to hear the parties, may hear evidence in regard to pertinent matters, and may revise the decision of the committee in whole or in part, or refer the matter back to the committee for further findings of fact. And any party in interest may present the order or decision of the commissioner, or the decision of an arbitration committee from which no claim for review has been filed, to the district court of the county in which the injury occurred, whereupon the court shall render a decree in accordance therewith, having the same effect as if it were rendered in a suit heard and determined by the court, except that there shall be no appeal upon questions of fact or where the decree is based upon an order or decision of the commissioner which has not been presented to the court within ten days after the notice of the filing thereof by the commissioner. With respect to these provisions, the Supreme Court of Iowa held (154 N.W. Rep. 1064): "Appeal is provided from the decree enforcing the award on which all save pure questions of fact may be reviewed. . . . We hold that though the act does not in terms provide for judicial review, except by said appeal, the statute does not take from the court all jurisdiction in the premises. . . . We are in no doubt that the very structure of the law of the land, and the inherent power of the courts, would enable them to interfere, if what we have defined to be the jurisdiction conferred upon the arbitration committee were by it exceeded  could inquire whether the act was being enforced against one who had rejected it, whether *216 the claiming employe was an employe, whether he was injured at all, whether his injury was one arising out of such employment, whether it was due to intoxication of the servant, or self-inflicted or, acceptance being conceded, into whether an award different from the statute schedules had been made, into whether the award were tainted with fraud on part of the prevailing party, or of the arbitration committee, and into whether that body attempted judicial functions, in violation of or not granted by the act." Thus it will be seen that the act prescribes the measure of compensation and the circumstances under which it is to be made, and establishes administrative machinery for applying the statutory measure to the facts of each particular case; provides for a hearing before an administrative tribunal, and for judicial review upon all fundamental and jurisdictional questions. This disposes of the contention that the administrative body is clothed with an arbitrary and unbridled discretion, inconsistent with a proper conception of due process of law. Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 545.
Objection is made that the act dispenses with trial by jury. But it is settled that this is not embraced in the rights secured by the Fourteenth Amendment. Walker v. Sauvinet, 92 U.S. 90; Frank v. Mangum, 237 U.S. 309, 340; New York Central R.R. Co. v. White, ante, 188.
It is elaborately argued that, aside from the Fourteenth Amendment, the inhabitants of the State of Iowa are entitled to this right, because it was guaranteed by the Ordinance of July 13, 1787, for the government of the Northwest Territory, 1 Stat. 51, in these terms: "The inhabitants of the said territory, shall always be entitled to the benefits of . . . the trial by jury." The argument is rested, first, upon the ground that Iowa was a part of the Northwest Territory. This is manifestly untenable, since that Territory was bounded on the west by the Mississippi River, and Iowa was not a part of it, but of *217 the Louisiana Purchase. But, secondly, it is contended that the guaranties contained in the Ordinance were extended to Iowa by the Act of Congress approved June 12, 1838, establishing a territorial government (c. 96, § 12, 5 Stat. 235, 239), and by the acts for the admission of the State into the Union. Acts of March 3, 1845, chaps. 48 and 76, 5 Stat. 742, 789; Act of August 4, 1846, c. 82, 9 Stat. 52; Act of December 28, 1846, c. 1, 9 Stat. 117; 1 Poor, Chart. & Const., 331, 534, 535, 551. This is easily disposed of. The Act of 1838 was no more than a regulation of territory belonging to the United States, subject to repeal like any such regulation; and the act for admitting the State, so far from perpetuating any particular institution previously established, admitted it "on an equal footing with the original States in all respects whatsoever." The regulation, although embracing provisions of the Ordinance declared to be unalterable unless by common consent, had no further force in Iowa after its admission as a State and the adoption of a state constitution, than other acts of Congress for the government of the Territory. All were superseded by the state constitution. Permoli v. First Municipality, 3 How. 589, 610; Coyle v. Oklahoma, 221 U.S. 559, 567, 570; Cincinnati v. Louisville & Nashville R.R. Co., 223 U.S. 390, 401. The State of Iowa, therefore, is as much at liberty as any other State to abolish or limit the right of trial by jury; or to provide for a waiver of that right, as it has done by the act under consideration.
Section 5 is singled out for criticism, as denying to employers the equal protection of the laws. It reads: "Where the employer and employe elect to reject the terms, conditions and provisions of this act, the liability of the employer shall be the same as though the employe had not rejected the terms, conditions and provisions thereof." As we have shown, if the employer rejects the act he remains liable for personal injury sustained by an *218 employee, arising out of and in the usual course of the employment, and is not to escape by showing that he had exercised reasonable care in selecting competent employees in the business, or that the employee had assumed the risk, or that the injury was caused by the negligence of a co-employee, or even by showing that the plaintiff was negligent, unless such negligence was willful and with intent to cause the injury or was the result of intoxication on the part of the injured party. This is the result whether the employee on his part accepts or rejects the act. But where the employee rejects it and the employer accepts it, then, by § 3b, "the employer shall have the right to plead and rely upon any and all defenses including those at common law, and the rules and defenses of contributory negligence, assumption of risk and fellow-servant shall apply and be available to the employer as by statute authorized unless otherwise provided in this act;" with a proviso not material to the present point. We cannot say that there is here an arbitrary classification within the inhibition of the "equal protection" clause of the Fourteenth Amendment. All employers are treated alike, and so are all employees; and if there be some difference as between employer and employee respecting the inducements that are held out for accepting the compensation features of the act, it goes no further than to say that if neither party is willing to accept them the employer's liability shall not be subject to either of the several defenses referred to. As already shown, the abolition of such defenses is within the power of the State, and the legislation cannot be condemned when that power has been qualifiedly exercised, without unreasonable discrimination.
Section 42 of the act provides: "Every employer, subject to the provisions of this act, shall insure his liability thereunder in some corporation, association or organization approved by the state department of insurance. *219 . . . And if such employer refuses, or neglects to comply with this section, he shall be liable in case of injury to any workman in his employ under part one (1) of this act." The Supreme Court of Iowa, in the Hunter Case, said of § 42, 154 N.W. Rep. 1056: "This clearly shows that no employer is compelled to insure unless he has accepted, and thus become subject to, the act"; proceeding, however, to discuss the case further upon the hypothesis that all employers named in the act were compelled to maintain insurance. In view of the construction adopted, it is unnecessary for us to pass upon the question of compulsory insurance in this case, appellant not having accepted the act.
Other contentions are advanced, but they are without merit and call for no particular mention.
Decree affirmed.