## JOHNSTON v. KENNECOTT COPPER CORP.

(Circuit Court of Appeals, Ninth Circuit. February 18, 1918.)

No. 3031.

1. STATUTES ⬤═56—GRANTING SPECIAL PRIVILEGE OR FRANCHISE—WORKMEN'S COMPENSATION ACT OF ALASKA.

The Workmen's Compensation Act of Alaska (Laws 1915, c. 71), rendering any person or corporation, employing five or more persons in connection with mining operations carried on in the territory, who shall not have given notice in manner specified to reject the provisions of the act, liable to pay compensation in accordance with a schedule to employés receiving personal injury, or to their beneficiaries in case of death, is not violative of the Organic Act of Alaska (Act Aug. 24, 1912, c. 387)

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

§ 9, 37 Stat. 514 (Comp. St. 1916, § 3536), inhibiting the Legislature from granting to any corporation, association, or individual any special or exclusive privilege or franchise, without the affirmative approval of congress, in that it grants any privilege or franchise to the mining companies of the territory.

2. MASTER AND SERVANT ☞347—WORKMEN'S COMPENSATION ACT OF ALASKA— VALIDITY—ABSENCE OF INSURANCE FEATURE.

The Workmen's Compensation Act of Alaska is not invalid, in that it fails to provide for payment of compensation to an injured servant, for, though the act contains no insurance feature, it substitutes another scheme to accomplish the same purpose, while the particular method is mainly one of legislative choice, and so long as the method adopted is reasonably adapted to the purpose, not arbitrary, and without proper regard to cause and effect, it is beyond the scope of judicial function to disturb the choice.

3. CONSTITUTIONAL LAW ☞211—"CLASS LEGISLATION."

Generally speaking, class legislation is prohibited by the equal protection of the laws clause of the Fourteenth Amendment of the federal Constitution, but legislation limited in its application is not within the prohibition, if within the sphere of its operation it affects alike all persons similarly situated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Class Legislation.]

4. CONSTITUTIONAL LAW ☞48, 211—CLASS LEGISLATION—DISCRETION OF LEGISLATURE.

Legislation can be condemned as class legislation only when it is without any reasonable basis and purely arbitrary. The Legislature possesses a wide scope of discretion in the exercise of its function of classification, and when a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain the law, the existence of that state of facts when it was enacted must be assumed.

5. CONSTITUTIONAL LAW ☞245—MASTER AND SERVANT ☞347—WORKMEN'S COMPENSATION ACT OF ALASKA—"CLASS LEGISLATION."

The Workmen's Compensation Act of Alaska, applying only to mining concerns employing five or more persons in the work, is not violative of the equal protection of the laws clause of the Fourteenth Amendment of the federal Constitution, as class legislation; mining being the one great industry of the territory, attended by many hazards and complexities.

6. MASTER AND SERVANT ☞347—WORKMEN'S COMPENSATION ACT OF ALASKA— VALIDITY.

The Workmen's Compensation Act of Alaska, applying to mining concerns employing five or more persons, is not invalid, as making it more difficult for workmen to elect to accept its provisions, and to waive them, once election is made, than it is for the employer, or on account of its being burdensome for workmen to pay the expenses pertaining to verification and recording.

7. MASTER AND SERVANT ☞347—WORKMEN'S COMPENSATION ACT OF ALASKA— VALIDITY.

The Workmen's Compensation Act of Alaska is not invalid, as making no provision respecting workmen under the age of majority for accepting or rejecting the provisions of the act; minors not being denied the interposition of a guardian or next friend to do so for them.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Action by J. W. Johnston, by his next friend, Otto F. Johnston, against the Kennecott Copper Corporation, a corporation. Judgment for plaintiff in accordance with Workmen's Compensation Act of Alaska, and he brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff below prosecutes error. While working for defendant in its mill, he suffered the loss of his right foot, and he alleges that the injury was the result of defendant's negligence. Plaintiff was at the time 20 years of age. The defendant by its answer pleaded the Workmen's Compensation Act of Alaska, asserting its liability to be $1,440 only, for which amount judgment was rendered against it and in favor of plaintiff. The plaintiff complains here of the action of the court in recognizing the validity of the act, and in rendering judgment in pursuance of its provisions, and not according to his alleged common-law remedy.

The act in question renders any person or corporation employing five or more persons "in connection with mining operations carried on" in the territory, who shall not have given notice in manner specified to reject the provisions of the act, liable to pay compensation, in accordance with a schedule adopted, to employés receiving personal injury, or to their beneficiaries in case death results from accident in the course of the employment, provided the employé so injured has not, prior to injury, given notice of his or her election to reject the provisions of the act in manner as prescribed.

The prescribed compensation for loss of a foot is $1,440. No compensation is allowed in any case where the injury is occasioned by willful intention to bring about the casualty, or where intoxication is the proximate cause. Provision is made for beneficiaries of a deceased person, whose death occurred through injury as an employé, to file their claim for compensation in writing, verified by the oath of the claimants, and for a hearing before the district court, or before a jury if one is demanded. Provision is further made whereby the employer may, in anticipation of conflicting claims of such beneficiaries, file a bond in the sum of $6,000, or make deposit of that amount to abide the result of the controversy. Actions for recovery of compensation as per the schedule may be maintained in the courts of the territory, and attachment may issue on compliance with prescribed conditions. The employé is inhibited from waiving by agreement any of his or her rights to compensation under the act.

The employer is conclusively presumed to have elected to pay compensation in accordance with the provisions of the act, unless notice in writing to the contrary shall have been given to the employé by recording said notice with the United States commissioner in whose precinct the employer's operations are carried on; the commissioner to be paid a fee of $1.50 for the recording. In case the employer shall exercise the right to reject the terms and provisions of the act, it is declared that he shall not escape liability, and that he shall not be entitled to the defenses of assumption of risk, negligence of co-employé, or contributory negligence, unless such negligence was the result of willful intent to cause the injury, or the result of intoxication; and in actions against the employer, where he has rejected the provisions of the act, it is presumed that the injury was the first result and growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury, the burden of proof resting upon the employer to rebut the presumption.

Employés are conclusively presumed to have elected to accept compensation in accordance with the provisions of the act until notice in writing is served upon the employer or his agent in person, which notice is required to be recorded, as in the case of an employer giving notice of rejection. Such notice must be accompanied by an affidavit thereon showing the date upon which the same was served upon the employer. In cases where the employé, having rejected the provisions of the act, brings action to recover, the employer is accorded the right to plead and rely upon any and all defenses, including those at common law, including assumption of risk, negligence by coservant, and contributory negligence: Provided, however, that if the employé sustains injuries as a result of the employer's failure to exercise reasonable care to maintain safety devices required by statute, or of the violation of any statutory regulations relating to the safety of employés, the doctrine of assumed risk shall not apply. It is also provided that, where both the employer and the employé have rejected the terms of the act, the employé shall have the same right of action as though the employer had not rejected the provisions of the act.

By section 35 either employer or employé may waive rejection of the terms of the act in the same manner as they may signify their election to reject. The thirty-ninth section provides that "the phrase 'mining operations,' whenever used in this act, shall be held to include all work in connection with underground workings, underground mines, open cut working, surface working, stamp mills, roller mills, chlorination processes, cyanide processes, coke ovens, all reduction work of any kind or character, and all work performed on or for the benefit of any mine, mining claim, or claims, whether quartz or placer, and the phrase shall be held to include development and construction work, as well as work carried on in connection with actual mining or milling."

John Lyons, of Seattle, Wash., and E. E. Ritchie and J. L. Reed, both of Valdez, Alaska, for plaintiff in error.

R. E. Capers, of North Yakima, Wash., and E. Lyders, of San Francisco, Cal., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The plaintiff challenges the validity of the Alaska act, on the ground that it denies the employé the equal protection of the law, and is in violation of section 9 of the Organic Act of the territory of Alaska, inhibiting the Legislature to "grant to any corporation, association or individual any special or exclusive privilege, * * * or franchise without the affirmative approval of Congress." Comp. St. 1916, § 3536.

The particular features of the act which it is insisted render it nugatory are: First, that it is class legislation; second, that it is discriminatory in its provisions; third, that it possesses no characteristic of industrial insurance and no provision for payment of compensation; that it creates no official authority for adjustment of claims, but merely compounds a schedule of payments to which the injured is entitled, and is a limitation of liability on the part of the employer.

[1] The suggestion that the act is in violation of section 9 of the Organic Act of the territory is not seriously pressed in the argument and briefs of counsel. Nor can it avail plaintiff, for it is manifest that the act grants neither privilege nor franchise to the mining companies of Alaska.

Counsel for defendant urges that the Fourteenth Amendment to the federal Constitution can have no application in the present controversy, because the amendment inhibits state action as it regards the denial of the equal protection of the laws, and does not, it is insisted, restrict the legislative action of a territory. This question may be waived, without deciding it, as we have concluded that plaintiff cannot prevail upon either of the questions presented in his behalf.

[2] For convenience, the third objection will first receive our attention. The gist of this objection to the validity of the act is that it contains no feature of industrial insurance and no provision for the payment of compensation. While the act does not contain any provision for industrial insurance, it does contain regulations for securing payment of the compensation for injuries. A bond or cash deposit by the mining company is provided for, where beneficiaries

of deceased persons are concerned, out of which to meet the compensation to which they are entitled; and in an action for the scheduled compensation, the employé has his attachment for securing the demand. So it cannot be said that the employé is without provision looking to the eventual payment of his claim. As to the absence of any insurance· feature, the late cases of the Supreme Court proceed upon a reasoning, in support of Employers' Liability Acts, which appears to us to be ample to support the present statute.

The New York act (Consol. Laws, c. 67), which is styled the "Workmen's Compensation Law," requires every employer subject to the provisions of the act to pay or provide compensation, according to a schedule, for the disability or death of his employé resulting from an accidental personal injury arising out of and in course of the employment, without regard to fault as a cause, except where the injury is occasioned by the willful intention of the injured employé, or where it results solely from his intoxication while on duty. A commission is created, with judicial functions, for passing upon claims, and a state insurance fund is provided for, to be made up primarily of premiums to be paid by the employers. By the present act the district court is constituted a tribunal for ascertaining the legitimacy of the claims and the amount, but the so-called insurance feature, as we have previously indicated, is wanting. In practically all other respects, this act conforms in principle with the New York legislation. The New York act was brought to test in the Supreme Court in the case of New York Central R. R. Co. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629. Responding to three considerations urged adverse to the act—namely, (a) that the employer is subject to a liability for compensation without regard to any neglect or default on his part, and this though the injury may be solely attributable to the neglect or fault of the employé; (b) that the employé is prevented from obtaining compensation commensurate with the damages actually sustained; and (c) that both the employer and the employé are deprived of the liberty of agreement respecting the terms of employment—the court first disposed of the questions pertaining to the right of litigants to invoke the common-law remedies and the defenses of assumption of risk, negligence of a coemployé, and contributory negligence adversely to the continued maintenance of the right in the face of legislation taking it away and substituting other adequate remedies and defenses, and then proceeded to a discussion of the reasons which are thought to support the act, saying:

"The statute under consideration sets aside one body of rules only to establish another system in its place. If the employé is no longer able to recover as much as before in case of being injured through the employer's negligence, he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy, without the difficulty and expense of establishing negligence or proving the amount of the damages. Instead of assuming the entire consequences of all ordinary risks of the occupation, he assumes the consequences, in excess of the scheduled compensation, of risks ordinary and extraordinary. On the other hand, if the employer is left without defense respecting the question of fault, he at the same time is assured that the recovery is limited, and that it goes directly to the relief of the

designated beneficiary. And just as the employé's assumption of ordinary risks at common law presumably was taken into account in fixing the rate of wages, so the fixed responsibility of the employer, and the modified assumption of risk by the employé under the new system, presumably will be reflected in the wage scale. The act evidently is intended as a just settlement of a difficult problem, affecting one of the most important of social relations, and it is to be judged in its entirety."

After referring to the scheme of compensation, the court continues:

"Of course, we cannot ignore the question whether the new arrangement is arbitrary and unreasonable, from the standpoint of natural justice. Respecting this, it is important to be observed that the act applies only to disabling or fatal personal injuries received in the course of hazardous employment in gainful occupation. Reduced to its elements, the situation to be dealt with is this: Employer and employé, by mutual consent, engage in a common operation intended to be advantageous to both; the employé is to contribute his personal services, and for these is to receive wages, and ordinarily nothing more; the employer is to furnish plant, facilities, organization, capital, credit, is to control and manage the operation, paying the wages and other expenses, disposing of the product at such prices as he can obtain, taking all the profits, if any there be, and of necessity bearing the entire losses. In the nature of things, there is more or less of a probability that the employé may lose his life through some accidental injury arising out of the employment, leaving his widow or children deprived of their natural support; or that he may sustain an injury not mortal, but resulting in his total or partial disablement, temporary or permanent, with corresponding impairment of earning capacity. The physical suffering must be borne by the employé alone; the laws of nature prevent this from being evaded or shifted to another, and the statute makes no attempt to afford an equivalent in compensation. But, besides, there is the loss of earning power; a loss of that which stands to the employé as his capital in trade. This is a loss arising out of the business, and, however it may be charged up, is an expense of the operation, as truly as the cost of repairing broken machinery or any other expense that ordinarily is paid by the employer. Who is to bear the charge? It is plain that, on grounds of natural justice, it is not unreasonable for the state, while relieving the employer from responsibility for damages measured by common-law standards and payable in cases where he or those for whose conduct he is answerable are found to be at fault, to require him to contribute a reasonable amount, and according to a reasonable and definite scale, by way of compensation for the loss of earning power incurred in the common enterprise, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall—that is, upon the injured employé or his dependents. Nor can it be deemed arbitrary and unreasonable, from the standpoint of the employé's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove, and substitute a system under which in all ordinary cases of accidental injury he is sure of a definite and easily ascertained compensation, not being obliged to assume the entire loss in any case, but in all cases assuming any loss beyond the prescribed scale."

As it relates to the freedom of agreement respecting employment, the court is of the view that the act is fairly supportable on the ground that it is a reasonable exercise of the police power of the state. The court further says concerning the act, answering the objection advanced that it is inimical to the equal protection clause of the Fourteenth Amendment:

"The only apparent basis for it is in exclusion of farm laborers and domestic servants from the scheme. But, manifestly, this cannot be judicially

declared to be an arbitrary classification, since it reasonably may be considered that the risks inherent in these occupations are exceptionally patent, simple, and familiar."

Now, all this discussion has proceeded independently of the industrial insurance feature of the act, and is as applicable and cogent here as to the New York act. The insurance feature, among other things, is designed to afford the employé adequate security for his compensation. In the present act, another scheme is evolved, intended to accomplish the same purpose. The particular method for accomplishing the purpose is mainly one of legislative choice, and so long as such method is reasonably adapted to the purpose, and is not arbitrary and without proper regard to cause and effect, it is beyond the scope of judicial function to disturb the choice. We think that the present legislation is reasonably adapted to secure to the employé the compensation provided for in the act. At least, it is such that the court will not say that the legislation is arbitrary and not based upon sufficient reason for its adoption.

In Hawkins v. Bleakly, 243 U. S. 211, 37 Sup. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 637, another case decided at the same time, involving the Iowa act (Acts 35th Gen. Assem. c. 147) relating to employers' liability and workmen's compensation, the same general reasoning is adopted for upholding the statute, and this again quite aside from the insurance provision. The Iowa act, in its general features, is practically the same as the New York act, and it was held that it is not inimical to that cause of the Fourteenth Amendment guaranteeing the equal protection of the laws. See, also, Mountain Timber Co., v. Washington, 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, and Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 Pac. 554.

This disposes of the third objection favorably to the validity of the act in question.

[3-5] The law is assailed by the first objection on the ground that it is thought to be class legislation, and this because, out of all the industries, the Legislature has selected but one class, namely, mining concerns employing five or more persons in the work. This pertains, again, to the equal protection of the laws clause of the Fourteenth Amendment. Classification of subjects for regulation by law is a function belonging to the legislative department of government. Generally speaking, class legislation is prohibited, but legislation which is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the prohibition. Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923.

The Legislature possesses a wide scope of discretion in the exercise of its function of classification, and such legislation can be condemned as vicious only when it is without any reasonable basis, and therefore purely arbitrary; and when legislative classification is called in question, if any state of facts can be reasonably conceived that would sustain the law, the existence of that state of facts at the time it was enacted must be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. To

the same purpose, with elaborate discussion of the subject, see Miller v. Wilson, 236 U. S. 373, 382, 35 Sup. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829; Louisville & Nashville R. R. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84; Mondou v. New York, New Haven & Hartford R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Cunningham v. Northwestern Improvement Co., supra.

The application of the rule here is simple. Mining is the one great industry of Alaska. It is attended by many hazards and complexities, and it is not strange that the Legislature should make of the single industry a classification for adjustment of workmen's compensation. The act is criticized because "mining operations" are to be held to include all work performed on or for the benefit of any mine or mining claim; it being urged that many persons but remotely connected with the working of mines are thereby included. This again is matter for legislative discretion, and the question whether the workmen are engaged in mining operations is one that can be best disposed of when we come to it.

[6] The second objection pertains to the elective aspect of the law. It is insisted that the law makes it more difficult for the workmen to make their election to accept the provisions, and to waive them when the election is once made, than for the employer, and that it is burdensome for the workmen to pay the expenses pertaining to verification and recording. This constitutes only a minor inequality, if inequality it can be called, and is without the indicia of arbitrary discrimination.

[7] Lastly, it is insisted that the act makes no provision respecting workmen under the age of majority for accepting or rejecting the provisions of the act. The Legislature assumed, perhaps, that a minor, having the capacity to contract or to be contracted with, has the capacity to reject or waive such provisions. But, however that may be, minors are not denied the interposition of a guardian or next friend in doing the act for them.

Affirmed.