THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL CAMPOS DEL TORO, Defendant and Appellant.

No. 13489.   Argued January 21, 1949.—Decided April 18, 1949.

*Isaías M. Crespo* and *E. Martínez Avilés* for appellant. *Vicente Géigel Polanco, Attorney General (José C. Aponte, Acting Attorney General,* on the brief) and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Rafael Campos del Toro was charged in the District Court of Arecibo with a violation of Act No. 72 of April 26, 1940 (Puerto Rico Food, Drugs and Cosmetics Act) consisting in that on March 5, 1947, in the Campos Drugstore, owned by him "he had in his possession and offered for sale commercial almond oil adulterated with cotton-seed oil.

After a trial by the court without a jury, he was convicted of the crime charged and was sentenced to pay a fine of $25, together with costs. Thereupon he appealed to this Court and assigns in his brief six errors claimed to have been committed by the lower court.

The first error is that the lower court erred in over-ruling the demurrer to the information. His contention is that the information did not state the amount of cotton-seed

oil with which the almond oil was adulterated nor that it. was branded as such or in any other manner. In support of his contention, he cites the case of *People* v. *Marín*, 54 P.R.R.. 620, in which this Court held that an information under Act No. 63 of April 28, 1931 (Sess. Laws, p. 414), (to prohibit the sale, storage or transportation of adulterated, misbranded . . . foods and drugs or medicines, etc.) was insufficient since it was not alleged therein that the commercial almond oil sold fell below the official standard of purity referred to in the Act or that the addition of certain substances mentioned in the information made the product fall. below the provided standard of quality required by the law.

The case of *People* v. *Marín, supra,* is not applicable to the case at bar since the Act alleged to have been violated therein did not contain, in the enumeration of the cases in which the drugs would be considered adulterated under said Act, an identical or similar provision to that of § 14 (*d*) (2) of the Act alleged to have been violated in this case, in the sense that a drug [1] will be considered as adulterated "If . . . any substance has been (1) mixed or packed therewith so as to reduce its quality or strength; or (2) *substituting wholly or in part therefor.*" (Italics ours.)

Although § 14 enumerates other cases in which a drug shall also be deemed adulterated, in some of which it is necessary to allege the manner in which the purity or strength of the adulterated drug differs from the standard of purity or strength required by the United States Pharmacopoeia or the National Formulary, under subdivision (*d*) (2) above mentioned, it is sufficient to allege only the adulteration. of

---

[1] In accordance with § 2, subdivision (*d*) of the same Act "The term 'drug' shall mean (1) . . . (2) articles intended for use in the diagnosis,. cure, mitigation, treatment or prevention of disease in man or other animals; and (3) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (4) . . ."

In accordance with the evidence, almond oil is used as "lubricant for children and for burns", and is therefore included in the term "drug" as defined by the Act.

the drug and the substance with which the same has been adulterated. We think that the allegation that defendant "possessed and offered for sale commercial almond oil adulterated with cotton-seed oil" is sufficient to charge one of the several modes of the crime of adulteration of drugs under the Act, and that the lower court therefore did not err in overruling the demurrer.

■■ The second error assigned by the appellant is that the lower court erred in refusing to grant him a trial by jury. He confines himself to assert in his brief that the amendment made by Congress to our Organic Act on August 5, 1947 (Public Act No. 362, First Session of Congress 80) whereby a new paragraph [2] was added to § 2 of said Act made § 2 of Article IV of the Constitution of the United States [3] extend to Puerto Rico and that the latter, in turn, made the Sixth Amendment to the Constitution [4] applicable to Puerto Rico.

Therefore, his position before this Court is that he was entitled by virtue of the Sixth Amendment to the Constitution of the United States to a trial by jury in the lower court. He assumed a similar position in said court on the

---

[2] Section 7 of the above-cited amendatory Act of our Organic Act reads as follows: "Section 2 of said Organic Act (48 U.S.C., sec. 737) is amended by adding at the end thereof the following new paragraph:

'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of Section 2 of article IV of the Constitution of the United States.' "

[3] Section 2 of Article IV of the Constitution of the United States reads:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

[4] Amendment VI of the Constitution of the United States reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

day of the trial when he raised, at the commencement of the proceeding, a "matter of law", which according to the very words of defendant's counsel was raised "rather as a matter for the record," counsel then arguing about the right of the defendant to a trial by jury by virtue of the constitutional provision above mentioned, and by reason of the amendment to our Organic Act cited above.

The record shows that on August 4, 1947, on the arraignment in this case, the defendant confined himself to making a plea of not guilty. His petition for a trial by jury was made for the first time on the day set for the trial on the grounds and in the manner and form already indicated. He did not allege any other ground nor invoked the discretion of the court under § 178 of the Code of Criminal Procedure.

Since defendant failed to request a trial by jury when arraigned—to which he was entitled by virtue of the provisions of the above-cited Section,[5] inasmuch as the information charged a misdemeanor originally filed in the district court—he waived at that time pursuant to the express language of said provision of law, the right to a jury trial. *Ex parte Torres*, 4 P.R.R. 78, 80; *People* v. *Sutton*, 17 P.R.R. 327, 341.

His contention that he was entitled to a trial by jury under the Sixth Amendment is untenable. This amendment does not guaranty to the citizens of the United States a trial by jury in State courts. *Maxwell* v. *Dow*, 176 U.S. 581,

---

[5] Section 178 of the Code of Criminal Procedure reads:

"Section 178.— (Amended by Act No. 84 of July 22, 1919, page 684.) —Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the District Court and the municipal courts also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the docket in which the case appears. If such election be made it shall be entered on the record and if it be not made that fact shall be stated in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, if good reasons are shown, the court may grant a trial by jury at any time after the calling of the docket."

44 L. ed. 597; *Brooks* v. *Missouri*, 124 U. S. 394, 31 L. ed. 454; *Fay* v. *New York*, 332 U. S. 261, 91 L. ed. 2043. Nor does it, in the absence of Congressional legislation to that effect, guaranty to the citizens of the United States in Puerto Rico a trial by jury in the insular courts. *Balzac* v. *P. R.*, 258 U. S. 298, 66 L. ed. 627. See also *Hawkins* v. *Bleakly*, 243 U. S. 210, 61 L. ed. 678; *Dowdell* v. *U. S.*, 221 U. S. 325, 55 L. ed. 753; *Dorr* v. *U. S.*, 195 U. S. 138, 49 L. ed. 128; *Hawaii* v. *Mankichi*, 190 U. S. 197, 47 L. ed. 1016. And we do not see how the amendment of August 5, 1947 to our Organic Act may be considered as extending to the citizens of the United States in Puerto Rico the constitutional right of trial by jury, by reason of its provision that "the rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of Section 2 of article IV of the Constitution of the United States," when there is nothing in its language so indicating.

The mention made of § 2 of Article IV of the Constitution which provides that "the citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," does not add anything to that effect.

The second error assigned is, therefore, nonexistent.

■ Appellant does not discuss in his brief the third and fourth assignments of error. According to his own words "they are of no great importance." In effect, it is so, and we shall not consider them.

■ The fifth assignment is that the lower court erred "in refusing to leave the case open to make an impartial chemical analysis of the contents of a vial or bottle containing the sample which served as basis to the information." The sixth is that it erred in weighing the evidence. We shall consider them jointly.

The evidence, in brief, showed that on the date set forth in the information defendant had in the Campos Drugstore

located in Arecibo and owned by him, a container which was on the counter, labeled "commercial almond oil". The Inspector of the Department of Health took a sample in triplicate and, after sealing, labeling, and identifying the bottles with his initials, he delivered one of them to the defendant, explaining to him the purpose of said procedure. He sent another of the samples to the laboratory of the Department of Health for its analysis which was made by the chemist Guillermety and showed that the oil was wholly cotton-seed oil, according to the qualitative and quantitative process of the analysis. The almond oil is used as a lubricant for children and for burns, while cotton-seed oil is used to lubricate watches and to make fine soap.

It was at the trial, finally held on January 13, 1948, that the defendant requested the court to make a new analysis by an "impartial" chemist using the sample delivered to defendant by the inspector on March 5, 1947. His petition was based on the fact that, having bought the almond oil from a U. S. firm, according to the chemist of said firm the oil sold to him was 90 per cent almond oil, without defendant being able to understand the result of the analysis made by the Government which indicated that the oil was wholly cotton-seed oil.

The lower court considered as tardy the petition made by defendant more than 10 months after the sample had been given to him by the Inspector of the Department of Health. We do not believe that the court abused its discretion, the more so when defendant was opportunely informed by the inspector regarding the purpose of the delivery of the sample.

■■ The defense of defendant hinged essentially on the fact that he always believed in good faith that the firm from which he had purchased the almond oil had sold him such oil. He offered documentary evidence consisting in invoices showing the purchase of "commercial almond oil" from a firm in the United States.

The Act which is alleged to have been violated in this case, in force at the present time, provides in subdivision (*b*) of § 5 that no person shall be subject to the penalties of said Act if he presents a certificate signed by, and containing the name and address of, the person residing in the Island of Puerto Rico from whom he received in good faith the article to the effect that such article is not adulterated or misbranded within the meaning of the Act. Such certificate was not presented by defendant in this case. Since he imported the oil, he assumed the risk of violating the Act, if it turned out to be adulterated, in any of the ways established by the statute. One of those ways is, as we have already seen, that if a drug is substituted *wholly* or *in part* by any other substance it shall be considered adulterated. Such is the situation in the instant case, in which the oil which was kept for sale as commercial almond oil turned out to be wholly cotton-seed oil. Therefore, the evidence is sufficient to support the conviction; and we do not think that the lower court committed manifest error in weighing it.

Since none of the errors assigned by the appellant has been committed, the judgment appealed from is affirmed.