This case is consolidated from two appeals which arose out of judgments entered in the Mahoning County Common Pleas Court after a jury verdict finding that defendants, Gary Clarke (Clarke) and Kraft General Foods, Inc. (Kraft), did not commit the tort of intentional infliction of emotional distress against plaintiff, Carole Malloy. For the reasons set forth below, the judgment of the trial court should be reversed, in favor of defendants, as to Case No. 96 C.A. 245 and affirmed, also in favor of defendants, as to Case No. 95 C.A. 241.
 I. STATEMENT OF FACTS
Plaintiff began working for Kraft in 1966 and became Clarke's secretary in 1988. After an argument with Clarke, in January 1991, plaintiff discontinued working. Soon thereafter, she began receiving therapy and was diagnosed as suffering from a single episode of major depressive disorder, which permanently prevented her from returning to work. Plaintiff then sued defendants for intentionally inflicting emotional distress upon her by increasing her workload and by Clarke's emotionally abusive attitude toward her.
Plaintiff complained that Clarke delegated portions of his paperwork to her. She stated that she was forced to work a fifty to sixty hour work week without overtime pay instead of her regular forty hour work week. Although, during the three and one-half years that she worked for Clarke, plaintiffs salary increased from $27,300 to $34,300 with a $2,000 performance bonus, full benefits, and five weeks of vacation. (Tr. 13-14).
Plaintiff described Clarke as impossible to work for, demanding, and a perfectionist. Nonetheless, Clarke consistently gave plaintiff excellent performance evaluations. Plaintiff stated that Clarke often got angry and yelled at her and that she was constantly in fear of losing her job. Plaintiff specified only two examples of Clarke's yelling at her, once when she missed a banquet in Miami, Florida, and once on her last day of work when Clarke told plaintiff that he was tired of her personal phone calls. Plaintiff testified that when Clarke got angry his face would get red and he would walk away. Regardless, plaintiff never asked for a job transfer or utilized Kraft's issue resolution procedure or their help hotline. (Tr. 1151-55, 1655).
On October 2, 1995, after hearing the testimony of 16 witnesses, the jury returned a verdict in favor of defendants. Plaintiff moved for a new trial, alleging insufficient jury instructions, but the court denied the motion. Plaintiff filed a timely appeal, resulting in Case No. 95 C.A. 241. However, on November 22, 1995, after plaintiff filed a motion for reconsideration, the court vacated its denial and reinstated plaintiffs motion for a new trial.
Plaintiff then filed an amended motion for a new trial or, in the alternative, for relief from judgment on the grounds that the jury venire did not reflect a representative cross-section of Mahoning County. Plaintiff stated that, because the townships are listed in alphabetical order, none of the 11,500 venire persons summoned for the jury year resided in Youngstown, the city where 91% of Mahoning County's African-American population lives.
On August 30, 1996, a hearing commenced on plaintiff's reinstated motion for a new trial and motion for relief from judgment. In November 1996, the trial court granted plaintiff a new trial based upon the following three grounds: (1) the court should have instructed the jury pursuant to plaintiffs proposed jury instructions; (2) the jury venire was not a representative cross-section of the community; (3) the jury verdict was not sustained by the weight of the evidence. Defendants filed a timely appeal, resulting in Case No. 96 C.A. 245.
 II. DEFENDANTS' ASSIGNMENTS OF ERROR
Defendants set forth four assignments of error, all relating to the trial court's granting of plaintiffs motion for a new trial. We will discuss these assignments Out of order for clarity.
Defendants' second assignment of error alleges:
 "The trial court erred and acted without jurisdiction when it vacated its order overruling plaintiffs motion for a new trial and granted plaintiff a new trial pursuant to Civil Rules 59 and 60."
Defendants cite Pitts v. Dept. of Transp. (1981) 67 Ohio St.2d 378,381, for the proposition that a motion for reconsideration is a nullity. The trial court realized this and ruled that plaintiff's motion for reconsideration was effectively a motion for relief from judgment under Civ.R. 60 (A) and (B). Appellant contests the propriety of the court's invocation of Civ.R. 60 under the facts at hand.
The court first claimed that it vacated its previous denial of plaintiff's new trial motion pursuant to Civ.R. 60 (A), which provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party * * *." A clerical error is one that is "mechanical in nature and apparent on the record which does not involve a legal decision or judgment." Lilly v. Leskovyansky (1996), 77 Ohio St.3d 97,100.
A trial court may not use Civ.R. 60 (A) to make substantive changes in its judgments. Id, citing Londrico v. Knowlton
(1993), 88 Ohio App.3d 282, which held that an error is apparent on the record if only a "blunder in execution" could explain certain aspects of a judgment entry. We cannot say that only a "blunder in execution" explains the judgment entry which overruled plaintiffs motion for a new trial. Accordingly, the trial court had no jurisdiction to reconsider plaintiffs motion on Civ.R. 60 (A) grounds.
In the alternative, the trial court held that it had jurisdiction to reinstate plaintiffs motion under Civ.R. 60 (11). The court stated that a year ago it promised plaintiff an oral hearing on her motion; although, there is no record of such an occurrence. The court and plaintiff cite Steadley v. Montanya
(1981), 67 Ohio St.2d 297, 299, which held that "[w]hile oral promises made by the court to a party not put on the record should be avoided, neither should a breach of a relied upon promise be permitted to deny the party its appeal." Steadley is not directly applicable to the case sub judice because plaintiff did not rely on the court's promise and miss her deadline to appeal as did the movant in Steadley.
Appellant emphasizes the fact that neither in plaintiffs motion for reconsideration nor in the court's granting of plaintiffs motion is there mention of a broken promise by the court. Only many months later did plaintiff and the court speak of a broken promise as justification for the vacation of the court's prior denial of plaintiffs new trial motion.
However, we refuse to challenge the trial court's veracity when it states that it promised plaintiff a hearing If the trial court had not broken its promise, then a hearing would have proceeded on whether or not a new trial was warranted due to insufficient jury instructions. Accordingly, the trial court had the ability to reinstate plaintiffs motion on these grounds.
Furthermore, using Civ.R 60 (B) (2), the court could also entertain plaintiffs relief from judgment motion dealing with whether the allegedly improper drawing of the jury venire constituted newly discovered evidence.
Therefore, defendants' assignment of error number 2 is overruled.
Defendant's fourth assignment of error provides:
 "The trial court abused its discretion in granting plaintiff a new trial on the basis of the court's failure to give plaintiffs proposed jury instruction on intentional infliction of emotional distress."
The standard to review a trial court's decision to grant a new trial is not necessarily governed by abuse of discretion. InRohde v. Farmer (1970), 23 Ohio St.2d 82, the court explained the applicable standard of review as follows:
 "[W]here a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, the order granting a new trial may be reversed only upon a showing of an abuse of discretion by the trial court. Where, however, a new trial is granted by a trial court, for reasons which involve no exercise of discretion, but only a decision as to a question of law, the order granting a new trial may be reversed on the basis of a showing that the decision was erroneous as a matter of law." Id at 90.
The trial court explicitly stated that it erred when it failed to use plaintiffs requested jury instructions on intentional infliction of emotional distress. The court explained that plaintiffs requested charge was a correct statement of law. It is apparent that the court granted a new trial based upon a legal decision and not by exercising its discretion on the issue of the jury instructions. See Sanders v. Mt. Sinai Med. Ctr. (1985),21 Ohio App.3d 249 (holding that if the court grants a new trial because it believes that it committed an error of law at trial, then no discretion is exercised and the appellate court can reverse solely on the grounds that no error was committed at trial). Therefore, to reverse the court's order of a new trial under this assignment of error, we need only find that the court's jury charge was correct and sufficient. See Stonerockv. Miller Brothers Paving, Inc. (1991), 72 Ohio App.3d 12223,134.
Intentional infliction of emotional distress has the following four elements: (1) defendant intentionally or recklessly; (2) by extreme and outrageous conduct, (3) proximately caused, and (4) plaintiff to suffer severe emotional distress that no reasonable person would be expected to endure. Tarver v. Calex Corp. (Jan. 29, 1998), Mahoning App. No. 96 C.A. 149, unreported, p. 13, citing Rine v. Sabo (1996), 113 Ohio App.3d 109. The trial court listed these elements and patterned its instructions after Ohio Jury Instruction 219.03.
Moreover, instructions requested by a party need only be utilized if they are correct statements of the applicable law.Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. The instructions proposed by plaintiff contained incomplete statements of the law. For example, plaintiff proposed a charge which stated that the jury must decide whether "the bounds of decency have been exceeded." More precise statements of the law, which the court used, are "[a]n act is extreme and outrageous when it passes all reasonable bounds of decency and is excessive, wanton or gross" (Tr. 2072) and "utterly intolerable in a civilized community" (Tr. 2071). Plaintiff complains that these definitions are too defense-oriented. However, these phrases accurately reflect the terminology set forth by the Supreme Court in Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369.
The court erred when it decided that it committed legal error at trial by not using plaintiffs proposed instructions. Accordingly, defendants' fourth assignment of error is sustained, and the court's grant of a new trial on the basis of faulty jury instructions is reversed. Because the trial court granted a new trial on multiple grounds, we must continue our analysis to determine whether the court properly granted a new trial on other grounds.
Defendants' first assignment of error alleges:
 "The trial court abused its discretion and erred when it granted plaintiff a new trial on the grounds that the verdict was against the weight of the evidence."
Civ.R. 59 (A) (6) allows a trial court to grant a new trial when the jury's verdict is not sustained by the weight of the evidence. A trial court's decision that the evidence does not support the verdict shall not be reversed absent an abuse of discretion. See Rohde v. Farmer (1970), 23 Ohio St.2d 82. See also, Poske v. Mergl (1950), 169 Ohio St. 70. However, when granting a motion for a new trial on these grounds, the trial court may not simply state that the verdict is against the weight of the evidence. Antal v. Olde Worlde Prod., Inc. (1984),9 Ohio St.3d 144. The court must articulate the reasons for such a decision. Id At 147.
As per this issue, the court in the case at bar merely stated:
 "Under the totality of circumstances, this court concludes that a new trial is necessary in the interest of justice. Trial courts have broad discretion in granting new trials, and plaintiffs new trial motion expressly invokes the discretion of this court. Even if the fair cross section and jury instruction issues, individually or in combination, did not amount to error requiring the verdict to be set aside, the court is convinced that the judgment is not sustained by the weight of the evidence, and that a new trial is necessary in the interest of justice."
Because the court failed to articulate its reasons as to why it found that the jury's verdict was not sustained by the weight of the evidence, we cannot review this issue. See Antal, supra.
Normally, this type of scenario would require remand to the trial court. However, the judge who made this conclusory statement is no longer on the bench to offer insight into his reasoning as to why he thought the jury's verdict was not supported by the weight of evidence.
A new trial granted on grounds such as weight of the evidence revolves around questions of witness credibility. From a review of the record, even if the only credible witness was the plaintiff, a reasonable jury could still determine that defendants did not commit intentional infliction of emotional distress against her.
Accordingly, defendant's first assignment of error is sustained.
Defendant's third assignment of error, which we have saved for last, contends;
 "The trial court abused its discretion and committed prejudicial error when it granted plaintiff a new trial on the grounds that the procedure used to summon jurors was unconstitutional."
Plaintiff requested relief from judgment pursuant to Civ.R. 60 (B) (2), which provides that "[u]pon motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for * * * newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (B)." Civ.R. 59 (B) gives plaintiff fourteen days from the journalization of the judgment entry to file a new trial motion.
Plaintiff filed a timely new trial motion on October 12, 1995 but omitted any reference to a nonrepresentative venire. By November 22, 1995 plaintiff had learned of the jury venire selection process and asked for relief By granting such relief the trial court implicitly found that plaintiff used due diligence in discovering the jury selection process.
Accordingly, we will focus on whether the trial court's decision granting plaintiffs Civ.R. 60 (B) (2) motion was an abuse of discretion. See State ex rel. Richard v. Siedner
(1996), 76 Ohio St.3d 149, 151 (implementing abuse of discretion as the applicable standard of review). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. To reverse we must determine that the trial court's order granting a new trial based upon the jury selection process resulted in a manifest miscarriage of justice. Id.
Defendants contend that, although the representative cross-section requirement is applicable to federal criminal, federal civil, and state criminal cases, it is inapplicable to state civil cases. Defendants are correct when they assert that the states may, but need not, require juries in civil cases, citing Hawkins v. Bleakly (1917), 243 U.S. 210. Article 1, Section 5 of Ohio's Constitution provides for the right to juries in civil trials.
Because the representative cross-section requirement is derived from the concept of an impartial jury and an impartial jury is required in civil trials, Lingafelter v. Moore (1917),95 Ohio St. 384, it is only logical that the representative cross-section requirement is applicable to state civil cases. See Thiel v. Southern Pacific Co. (1946), 328 U.S. 217, for a discussion of how the impartial jury right in civil and criminal cases constitutes a right to a jury drawn from a representative cross-section of the community.
Accordingly, we apply the following test to the scenario at hand:
 "In order to establish a violation of the fair representative cross-section the community requirement for a petit jury array * * *", a defendant must prove: (1) that the group alleged to be excluded is a "distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Moore
(1998), 81 Ohio St.3d 22, 27-28, quoting State v. Fulton (1991), 57 Ohio St.3d 120.
Here, plaintiff submitted statistics from the Census Bureau showing that 92% of Mahoning County's African-American population resides in Youngstown. None of the 11, 500 venire persons selected for the jury year beginning in September 1995 were from Youngstown. This was due to the fact that the cities of Mahoning County were listed in alphabetical order and the administrative judge chose low key numbers, resulting in a system of selection which did not proceed past the city of Struthers.
We must first determine whether the trial court acted unreasonably by holding that the blacks of Youngstown constitute a distinctive group in the community. A distinctive group is one who suffers community prejudices. Hernandez v. Texas (1954),347 U.S. 475. Geographical exclusions alone do not deprive a litigant of a representative cross-section. However, it was not unreasonable for the trial court to decide that, when a geographic exclusion results in a inordinately large racial discrepancy in venire persons, a distinctive group is excluded, satisfying the first element of the Fulton test.
Additionally, the second element is easily satisfied in the case at bar. Almost 15% of Mahoning County's population is black, 92% of whom live in Youngstown. However, the blacks of Youngstown were not part of the 11, 500 member jury pool. This is sufficient to demonstrate that the court could have reasonably believed that the distinctive group in question was not fairly represented in Mahoning County juries.
As for the third element of Fulton, systematic exclusion means that the exclusion of the group at issue is inherent in the particular jury selection process used. Duren v. Missouri
(1979), 439 U.S. 357, 366 (holding that the elimination of a group from a few venires is not systematic, but elimination from every weekly venire for a year is considered systematic). Ohio courts have defined systematic as the intentional exclusion of a distinctive group. See, e.g., State v. Moore (1998), 81 Ohio St.3d 22,28; State v. Glenn (1986), 28 Ohio St.3d 451, 454;State v. Johnson (1972), 31 Ohio St.2d 106, 114. See, also, Webster's Ninth New Collegiate Dictionary (1987) 1199 (defining a systematic error as "an error that is not determined by chance but by a bias")
The court found that the jury administrators deliberately excluded Youngstown residents from jury duty without explaining how or why it found such discriminatory intent. The jury commissioner testified at the motion hearing that the key number system is used every year and that this is the first time that he is aware of that Youngstown residents were not part of the venire. In November, two months alter the venire was drawn, the judges discovered the lack of Youngstown residents and ordered a new venire to be drawn for the jury year.
Although the results of the jury selection process in the case at bar are not preferable, there is absolutely no proof that the lack of Youngstown residents was intentional, as required by theFulton test.
Accordingly, the court's order granting a new trial to plaintiff is reversed and the jury verdict in favor of defendants is reinstated.
 III. PLAINTIFF'S ASSIGNMENTS OF ERROR
Plaintiff submits two assignments of error for our review, the first of which need not be addressed because it deals with the trial court's original denial of plaintiffs new trial motion on grounds of improper jury instructions. The trial court reinstated the new trial motion and subsequently granted plaintiffs motion, making appeal on this issue moot.
Plaintiffs second assignment of error provides:
 "The trial court erred in sustaining defendant's objection to the testimony Carole Malloy, and refusing to allow plaintiff to testify to the content of her telephone conversation with KGF employee John Emerson."
During plaintiffs testimony, she attempted to relate the contents of a telephone conversation between herself and Mr. Emerson, a former co-worker. Because defendants objected to the admission of said conversation, plaintiffs attorney proffered the following testimony:
 "He called her. He asked how the trial was going. He told her that Mr. Clarke has contacted him and other KGF employees to tell them that they all have to be on Mr. Clarke's side during this litigation; that Carole Malloy wants Gary Clarke's job; that John Emerson would like to have come in to testify but Laura Lambert and Jim Hennigan had been assigned to watch him to keep him out of the State of Ohio so he cannot be subpoenaed; that he has to report back to them hourly; that if he would come in to testify, he would tell the truth; that he and other KGF witnesses have been contacted by the Kraft lawyers to show them how to change their deposition testimony; that he refused to go along with this. [lie then set up a meeting place so that plaintiffs attorney could subpoena him; however, he did not show up.]" (Tr. 1060-1061).
The court held in camera voir dires of plaintiff and of Mr. Emerson. Plaintiffs version of her conversation with Mr. Emerson was not as insinuating as her attorney's. Moreover, Mr. Emerson stated that he did not want to be subpoenaed and that he only called plaintiff because she was a friend and he wanted to tell her that he was not being produced by Kraft as a witness. (Tr. 1179). The court disallowed the admission of plaintiffs proffered testimony.
Plaintiff now contends that her proffered testimony was nonhearsay under Evidence Rule 801 (D) (2) (d) which provides that an admission by a party-opponent is admissible if the statement is offered against a party, is made by that party's agent or servant concerning a matter within the scope of his agency or employment, and is made during the existence of an employment relationship. Plaintiff correctly states that Mr. Emerson was Kraft' s employee and that the telephone conversation occurred while Mr. Emerson was employed by Kraft. However, plaintiff incorrectly contends that it is "beyond the realm of dispute that the statements (Mr. Emerson) made to her concerned matters `within the scope of employment'."
Mr. Emerson works for Kraft's grocery sales division. Trial testimony, depositions, and the production of witnesses are not matters that fall within the scope of Mr. Emerson's employment. Accordingly, the content of the telephone conversation as alleged by plaintiff was not a vicarious admission as defined by Evidence Rule 801 (D) (2) (d).
Plaintiffs second assignment of error is overruled and the trial court's judgment in Case No. 95 CA. 241 is affirmed.
Judgment of the trial court is affirmed in part and reversed in part and the jury verdict in favor of defendants is reinstated. Judgment is reversed as to the order of granting a new trial to the plaintiff.
Cox, J., concurs.
Vukovich, J., concurs.
APPROVED:
 ___________________________________ JOSEPH O'NEILL Retired Judge of the Seventh Appellate District, Sitting by assignment.