[1] Reported in 204 N.W. 552.
Action under the Federal Employers Liability Act to recover for the death of Clarence Y. Hope, plaintiff's intestate, an employe of the defendant. There was a verdict for the plaintiff. The defendant's motion for judgment notwithstanding the verdict or a new trial was denied. The defendant appeals from the judgment entered upon the verdict.
The decedent's death occurred in Iowa in a rear-end collision between a through passenger train and an engine and caboose upon which the deceased and other members of the crew were going home to dinner after hauling state and interstate cars from the coal mines to the defendant's main line. The accident was caused by the fault of the train dispatcher in letting the engine and caboose onto the main line in front of the coming passenger train. The defendant concedes negligence.
The questions are:
(1) Whether the evidence sustains the finding of the jury that the deceased was employed in interstate commerce.
(2) Whether proceedings taken in Iowa under its compensation act, upon the initiative of the defendant, after the commencement of this action, resulting in an award to the widow of the decedent, bars a recovery upon the ground that it was there determined that the deceased was engaged in intrastate commerce.
(3) Whether there is such identity of parties as to make the finding that the decedent was employed in intrastate commerce available as an estoppel.
(4) Whether the action may be maintained by a special administrator.
(5) Whether the verdict is excessive.
1. The decedent, Clarence Y. Hope, was the conductor of a train engaged in hauling cars from coal mines in Iowa to Pershing on the defendant's main line 10 miles away. He and the rest of the crew lived at Chariton on the main line southerly of Pershing. On the morning of February 4, 1923, the plaintiff and his crew left Chariton, went to Pershing, and commenced the work of hauling the loaded *Page 463 
cars of coal from the mines to the Pershing yards. The first drag was of 11 cars of which two were interstate. The second drag was of 10 cars, all intrastate. Under the directions of Hope the second drag was shoved against the first on a sidetrack and the brakes set on the two interstate cars and one other. Apparently this was done to convenience the work yet remaining. This work was the last which the crew did in the physical movement of the two interstate cars, or in the transportation of any coal cars. The hauling of interstate cars from the mines to the Pershing yards was a movement in interstate commerce. Philadelphia R. Ry. Co. v. Hancock, 253 U.S. 284, 40 Sup. Ct. 512, 64 L. ed. 907, and cases cited.
Immediately after setting the brakes the engine was coupled to the caboose and the crew started to Chariton for dinner. The collision occurred within the Pershing yard limits. The facts bring the case fairly within those holding the employe within the provision of the act when going to or returning from his place of work. Erie R. Co. v. Winfield, 244 U.S. 170, 173,37 Sup. Ct. 556, 61 L. ed. 1057, Ann. Cas. 1918B, 662; North Carolina R. Co. v. Zachary, 232 U.S. 248, 260, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159; Director General v. Bennett (C.C.A.) 268 F. 767; Erie R. Co. v. Downs, 250 F. 415, 162 C.C.A. 485; Dennison v. Payne, 293 F. 333, where the facts are similar to those in the case at bar. The case of Erie R. Co. v. Welsh, 242 U.S. 303,37 Sup. Ct. 116, 61 L. ed. 319, where the work of the employe was finished and he was reporting for orders, is distinguishable. In the Winfield case the court said:
"In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment *Page 464 
also extended to intrastate commerce is for present purposes of no importance."
When the crew left Pershing for Chariton it intended returning in the afternoon to complete the unfinished work of hauling the coal cars from the mines to the Pershing yards; and if it had done so it would have moved interstate and intrastate cars as occasion required. No further orders to do the work were necessary; though to use the main line in returning to Pershing running orders from the train dispatcher would have been necessary. The crew intended taking water for the engine at Chariton. It could not be had at the mines or at Pershing. The intended return in the afternoon and the necessity of getting water at Chariton are urged by the plaintiff as facts of consequence. Facts somewhat like these were held not important in Dennison v. Payne, 293 F. 333, and cases are cited there in support of that view. There may be distinguishing facts in the cases cited. We do not stop to analyze or consider them; but it is proper to note that the crew were intending to return and to some extent this may characterize their work at the time. Baltimore O.R. Co. v. Kast (C.C.A.) 299 F. 419. It was not reporting to Chariton for orders. There was unfinished work at the mines which would have been done without further direction except for the collision.
There is another feature to which the plaintiff attaches importance. At the mines the conductor received manifests showing the destination of the cars. From Pershing he telephoned to the operator at Williamson, a few miles northerly of Pershing, the information which they contained, and the operator made bills of lading for the conductors who later picked up the cars at Pershing and continued them on their interstate or intrastate journey. It was the duty of the decedent afterward to give the manifests to the operator at Williamson or mail them to him from Chariton. Mailing seems to have been the usual way of doing. The operator checked his shipping bills with the manifests; and the manifests were then filed as a part of the company's records. Hope, on the day of the accident, telephoned as usual the information from Pershing to the operator *Page 465 
at Williamson. The manifests were in his custody in the train-book in the caboose at the time of the collision. The fair inference is that they were burned in the fire which followed. If he had reached Chariton, the decedent, in the usual course, would have mailed them to Williamson on the evening train; and to this extent his duties as to the interstate and intrastate cars hauled from the mines to the Pershing yards were unfinished at the time of his death.
The work which the deceased was doing was so much connected with interstate commerce, so much a part of it, that the question whether he was employed in interstate commerce was at the least one for the jury.
2. The question next for consideration is whether the award in the compensation proceeding is a bar. The deceased died on February 13, 1923, nine days after the collision, leaving his wife, to whom he had been married 11 weeks, and children by a former marriage. The plaintiff was appointed special administrator on February 20, 1923. Both the plaintiff and the defendant were prompt. Suit was brought on February 21, 1923. On March 2, 1923, a proceeding was instituted by the defendant before the industrial commissioner of Iowa under the compensation act against the widow. The compensation act provides that the employer, if an agreement is not reached, may apply for an arbitration. Mrs. Hope answered the defendant's petition for an arbitration alleging that the decedent was employed in interstate commerce, that the compensation act was without application and did not govern her rights, and asked that no relief be granted. She did not refer to the pending action in Minnesota but in effect alleged that the compensation proceeding was without jurisdiction. She did not join in the appointment of arbitrators. On March 20, 1923, the arbitration committee awarded her $15 per week for 300 weeks. The widow did not appear but appealed to the industrial commissioner. The commissioner, she not appearing, affirmed the arbitration committee. The widow appealed to the district court, but she did not appear. The district court affirmed the commissioner. The answer of the defendant first interposed alleged the compensation act of Iowa and that the decedent was engaged in intrastate commerce. A supplemental answer alleged *Page 466 
the determination by the arbitration committee and commissioner. A second supplemental answer alleged an affirmance by the district court. If the determination in the compensation proceeding is a bar to the prior action under the Employers Liability Act the plaintiff cannot recover regardless of what his proofs show or the fact is as to the character of the decedent's employment.
The liability of the carrier for the death of an employe is "to his or her personal representative, for the benefit of the surviving widow or husband and children of such employe; and, if none, then of such employe's parents; and, if none, then of the next of kin dependent upon such employe * * * ." 35 St. 65; U.S. Comp. St. 1916, § 8657. The provision as to jurisdiction is as follows:
"Under this Act an action may be brought in a circuit [now district] court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this Act shall be concurrent with that of the courts of the several states, and no case arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 36 St. 291; U.S. Comp. St. 1916, § 8662.
It was the duty of the Minnesota court to proceed with the action brought by the plaintiff when its jurisdiction was involved. It was an action which the Minnesota court had competent jurisdiction to try. In Second Employers' Liability Cases, 223 U.S. 1, 55, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A. (N.S.) 44, the court with emphasis stated it to be the duty of a state court, when its jurisdiction as prescribed by local law was adequate to the occasion, to proceed with the enforcement of rights accruing under the act. It has not been doubted since. See Schendel v. McGee (C.C.A.) 300 F. 273, 278.
The Federal act, within the field which it covers, supersedes the common law liability, and the liability created by death by wrongful act statutes, or employers' liability acts or compensation acts. *Page 467 
Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 34 Sup. Ct. 635,58 L. ed. 1062, L.R.A. 1915C, 1, Ann. Cas. 1915B, 475; Erie R. Co. v. Winfield, 244 U.S. 170, 37 Sup. Ct. 556, 61 L. ed. 1057, Ann. Cas. 1918B, 662; New York Cent. R. Co. v. Winfield,244 U.S. 147, 37 Sup. Ct. 546, 61 L. ed. 1045, L.R.A. 1918C, 439, Ann. Cas. 1917D, 1139; New York Cent. H.R.R. Co. v. Tonsellito,244 U.S. 360, 37 Sup. Ct. 620, 61 L. ed. 1194; Southern Pac. Ry. Co. v. Ind. Acc. Com. 251 U.S. 259, 40 Sup. Ct. 130, 64 L. ed. 258, 10 A.L.R. 1181; Philadelphia Reading Ry. Co. v. Hancock,253 U.S. 284, 40 Sup. Ct. 512, 64 L. ed. 907. The defendant does not claim otherwise. The right of action which the Federal Employers Liability Act gives is to be enforced in a court proceeding according to the course of the common law in the orderly investigation of facts and the application of the law. That is the clear purpose of the act. Congress so intended for it designated courts of that character to administer it.
The proceeding before the industrial commissioner is not according to the course of the common law. It is a special statutory proceeding, summary in character, and largely administrative, through involving judicial discretion, and providing for a judicial review.
The statute provides:
"Process and procedure under this act shall be as summary as reasonably may be. While sitting as an arbitration committee, or when conducting a hearing upon review, or in the making of any investigation or inquiry, neither the commissioner nor the arbitration committee shall be bound by common law or statutory rules of evidence, or by technical or formal rules of procedure, but may hold such arbitrations or conduct such hearings and make such investigation and inquiries in the manner best suited to ascertain the substantial rights of the parties." Supp. Code Iowa 1913, § 2477-m24, as amended; Code Iowa 1924, § 1441.
The industrial commissioner may review the findings of the arbitration committee. There may be an appeal from the commissioner to the district court. Upon such appeal the findings of the industrial commissioner in the absence of fraud are conclusive; but the court may set aside his order or decree if it finds that he acted in excess of his powers; or that the decree was procured by fraud; or *Page 468 
that the facts found do not support the decree; or if there is not sufficient competent evidence to warrant the decree; but upon no other ground. Id. § 2477-m33; Code Iowa 1924, § 1453. Reference may be had to Hunter v. Colfax Consol. Coal Co.175 Iowa, 245, 154 N.W. 1037, 157 N.W. 145, L.R.A. 1917D, 15, Ann. Cas. 1917E, 803, where the act is considered at length, and to Hawkins v. Bleakly, 243 U.S. 210, 216, 37 Sup. Ct. 255,61 L. ed. 678, Ann. Cas. 1917D, 637, where the court said that "the act prescribes the measure of compensation and the circumstances under which it is to be made, and establishes administrative machinery for applying the statutory measure to the facts of each particular case; provides a hearing before an administrative tribunal, and for judicial review upon all fundamental and jurisdictional questions."
The claim of the defendant is that the finding that the decedent was engaged in intrastate commerce, necessary to an award in the compensation proceeding, and expressly made, binds the personal representative of the deceased, proceeding under the Federal act in an earlier commenced action. It does not claim that the award is res adjudicata in the broad sense, but that it is an estoppel upon the question of the character of the deceased's employment. If this view be the correct one the question whether courts of common law jurisdiction, designated by Congress, shall determine the employe's rights in a common law proceeding, or whether they shall be determined by compensation boards proceeding summarily, may depend upon which moves with the greater celerity; and in the ordinary case it is the compensation board. It is illustrated here. The award was made within 18 days after the commencement of the proceeding, and in 90 days after the commencement of the proceeding the award was affirmed by the court. It was a year after its commencement before the action based on the Federal right was called for trial.
The defendant relies and rightly enough upon Williams v. Southern Pac. Co. 54 Cal.App. 571, 202 P. 356, a carefully considered case. There the plaintiff, who was the beneficiary, brought an action as administratrix of her husband to recover under the Federal act. Later, just prior to the expiration of the statutory limitation fixed *Page 469 
by the compensation act, and to save her right if she failed in her action under the Federal act, she applied in her individual capacity for an adjustment under the compensation act. She asked that the proceeding be held in abeyance; but the commission proceeded with it, made her an award, the award was pleaded as res adjudicata, and was held to be so. The result was harsh.
It seems that something is wrong in the law or its administration, if one claiming and enforcing a cause of action under the Federal act, the character of the employment as interstate determining his right, and the character of his employment being uncertain as a question of law, or for the jury as a question of fact, must lose it if he seeks or protect himself in a less valuable right under the compensation act. See Corbett v. Boston Maine Railroad, 219 Mass. 351, 107 N.E. 60,12 A.L.R. 683. This is not quite the case here, for the beneficiary fought against instead of for the application of the compensation act. It is harder here than in the California case, assuming that the beneficiary had a right under the Federal act, as found by a tribunal designated by Congress to try the question, if she must take against her will a per week award for 300 weeks, the aggregate of which is but a fraction of what she would have under the verdict of the jury, and the yearly amount of which is less than a low rate of annual interest upon her actual damage. Such a result does not change the law, but it prompts the inquiry whether it is the necessary or intended result. From the facts surrounding the accident, and with causal negligence admitted as here, there arose one cause of action. It was under the Federal act or the Iowa compensation act. Of course the facts making it the one or the other are different; but the determining single question was whether the decedent was employed in interstate commerce.
The question presents some difficulty. The defendant forcefully argues that the beneficiary had her remedy as defendant in the compensation proceeding; that if it was there found that the deceased was engaged in intrastate commerce, as it was found, the award and nothing else was her right; that if it had been found that he was not engaged in intrastate commerce she was left to the result of the action brought by the administrator; and that the finding in the *Page 470 
compensation proceeding is rightly a bar. The argument is plausible. It may be sound. No case precisely in point is found, for in the California case the beneficiary took her case to the industrial board, as did the beneficiary in Dennison v. Payne (C.C.A.) 293 F. 333, 342, where it was assumed that the finding in the compensation proceeding might be a bar, but not directly so held, for the decision was placed upon another ground. Here the beneficiary did not invoke the aid of the compensation board, protested that her husband met his death while employed in interstate commerce, that her rights were not controlled by the compensation law, and participated in the proceeding only formally.
Without authority controlling or certainly guiding us, we are content to hold that the substantive right given the employe or his representative by Congress under express constitutional grant, with the courts to which he may go for its enforcement pointed out to him, is a superior substantive right; and that when he or his representative has chosen the forum to which to submit his cause, he cannot, against his objection and upon the initiative of his employer, be required to submit it in a summary proceeding commenced later under a compensation act.
If the action had been brought in a Federal district court in Iowa, as with great propriety it might have been, we cannot think that the Federal court would have permitted the defendant to assert as a bar against the plaintiff an award to the beneficiary in the later compensation proceeding, made against the protest of the beneficiary that her rights were determinable in the pending action. The result should be the same if the action were brought in a Federal court in Minnesota as it might have been, or in a state district court of Iowa, where it might have been brought with greater convenience than in Minnesota. And it should be the same when brought in a state court of Minnesota designated by Congress as a proper court. It may be that the widow did not in her private capacity do what she could have done to protect herself. It may be that the plaintiff, anticipating the plea of a bar, might have done something more than he did. It may be that the well understood rule, recently discussed in Kline v. Burke Constr. Co. 260 U.S. 226, *Page 471 43 Sup. Ct. 79, 67 L. ed. 226, 24 L.R.A. 1077, that when two actions, both in personam, are pending, jurisdiction in one is not affected by the other, does not apply in full where there is one action proceeding according to the course of the common law to enforce a right given by Congress and another, proceeding summarily, under a statute to enforce a right given by a state compensation act. The widow was the only party in the compensation proceeding. The other beneficiaries are forgotten in that proceeding and in the action under the Federal act. The plaintiff was not a party to the compensation proceeding. And this brings us to the question whether there is such identity of parties as to enable the defendant to invoke an estoppel.
3. It is the contention of the plaintiff that, though the fact of the character of employment found in the compensation proceeding might in a particular case be an estoppel in a subsequent action, there can be no estoppel here because of lack of identity of the parties.
The right of recovery under the Employers Liability Act is in the personal representative, not in the beneficiaries. The award under the compensation act is to the beneficiaries. The personal representative of the decedent does not participate. The beneficiaries cannot sue under the Federal act. American R. Co. v. Birch, 224 U.S. 547; Missouri, K. T. Ry. Co. v. Wulf,226 U.S. 570, 33 Sup. Ct. 135, 57 L. ed. 355, Ann. Cas. 1914B, 134; St. Louis, S.F. T. Ry. Co. v. Seale, 229 U.S. 156,33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156. If the holding by the circuit court of appeals in Dennison v. Payne, 293 F. 333, 342, is correct, and it is the only Federal authority directly in point, it should be held that there was a lack of identity of parties and therefore no estoppel. There the beneficiary, who as administratrix was plaintiff in an action under the Federal act to recover for the decedent's death, petitioned for an award under the compensation act, but stated that it was done to avoid the possible bar of the statute of limitations. Nevertheless the proceeding continued and an award was made to the beneficiary. The court relied upon the principle of Troxel v. Delaware, L. 
W.R. Co. 227 U.S. 434, 33 Sup. Ct. 274, 57 L. ed. 586, where the circumstances were different; but the rule as to the necessity of identity *Page 472 
of parties was stated there. In reaching its conclusion the court of appeals said [page 344]:
"In the present suit there was not identity of parties, and that is sufficient to make the doctrine of res judicata inapplicable. As in our opinion the plaintiff's intestate was engaged in interstate commerce at the time of his death, and as the proceedings before the Pennsylvania state board were not between the same parties, they therefore cannot estop the plaintiff from maintaining the present suit."
We follow the Federal authority and hold that there was not the requisite identity of parties.
4. The plaintiff is special administrator. The Federal statute puts the cause of action in the personal representative. Our holdings are that a like action under our death by wrongful act statute, or under statutes of other states, may be maintained by a special administrator. Jones v. Minn. T. Ry. Co. 108 Minn. 129,121 N.W. 606; Castigliano v. G.N. Ry. Co. 129 Minn. 279,152 N.W. 413; State v. Probate Court, 149 Minn. 464, 184 N.W. 43. The personal representative is but a trustee for the purpose of recovering for designated beneficiaries. The practice has been frequent both in the state and Federal courts to bring the action in the name of a special administrator and we abide by our former holdings.
5. The verdict was for $26,047.50. The defendant urges that it is excessive. The deceased was 49 years old. His life expectancy was between 21 and 22 years. He had been married to his present wife 11 weeks. He contributed from $135 to a $150 a month to her. His earnings were considerably greater. He had children by a former wife but as to them the record gives us no information. He was badly burned. The testimony of his nurse is that he was unconscious all of the 9 days that he lived. The testimony of the widow is that he was at times conscious, spoke rationally, and suffered greatly. With the evidence so, it was proper to award damages for conscious pain and suffering. We do not allow a substantial award for pain and suffering unless there is substantial evidence of it, nor is a jury permitted to make an emotional award *Page 473 
through sympathy for suffering. Fries v. C.R.I. P. Ry. Co.159 Minn. 328, 198 N.W. 998. How much of the verdict was for pain and suffering the record does not show. The amount of it is fairly sustained. Clark v. Davis, 153 Minn. 143, 190 N.W. 45; Schendel v. C.G.W. Ry. Co. 159 Minn. 166, 198 N.W. 450, 199 N.W. 111.
It may be noted that if subsequent events make it desirable the trial court, having charge of the distribution of the fund, can require the discharge of liability upon the compensation award so that the defendant will not be inconvenienced thereby.
Judgment affirmed.
Mr. Justice Stone took no part.