GEORGE R. HEALY v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.[1]

October 2, 1925.

No. 24,731.

**Decedent switchman engaged in task directly connected with interstate transportation.**

Deceased was a switchman in the employ of an interstate railroad. His crew had just picked up and put onto the main line 20 cars of interstate freight which they were moving to a yard farther on. Leaving these cars in charge of a flagman, they went a few miles distant to pick up 5 cars of intrastate freight which they intended to join and move on with the 20 interstate cars. It was while on the way to pick up the 5 local cars that the deceased was injured. *Held* that he was engaged in a task so directly and immediately connected with interstate transportation as to form substantially a part and necessary incident thereof within the rule of New York C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. ed. 1298.

See Commerce, 12 C. J. pp. 44, § 53; 45, § 55.

See notes in 47 L. R. A. (N. S.) 58; L. R. A. 1915C, 61; 10 A. L. R. 1226; 14 A. L. R. 736; 24 A. L. R. 642; 29 A. L. R. 1209. 18 R. C. L. pp. 853, 854; 3 R. C. L. Supp. 862; 4 R. C. L. Supp. 1219; 5 R. C. L. Supp. 1008.

Action in the district court for Ramsey county to recover for the death of plaintiff's intestate. The case was tried upon stipulated facts before Bechhoefer, J., who ordered judgment in favor of defendant. Plaintiff appealed. Reversed.

*Tom Davis, Ernest A. Michel* and *Irl Morse*, for appellant.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall*, for respondent.

STONE, J.

Action to recover damages for the death of Victor Effinger. Defendant admits liability but, on stipulated facts, prevailed below in

[1]Reported in 205 N. W. 260.

its contention that Effinger's employment at the time being was intrastate. The resulting judgment was for $10,000, the limit fixed by the statute of Indiana, where the accident occurred. On this appeal by plaintiff there is presented only the question whether the deceased was engaged at the time being in interstate commerce.

Effinger was a member of a switching crew "working out of Terre Haute, Indiana." Its daily work began by hauling a "miner's train" from Terre Haute some 15 miles to the Jackson Hill and Bickett mines, at the latter of which the passenger coaches, used by the miners, were left for the day.

On the day in question the crew, after leaving the coaches at the Bickett Mine returned to the Jackson Hill Mine, got 20 cars of company coal consigned to Bensonville, Illinois, which they were to take to the West Clinton Yard, about 9 miles distant. They had proceeded with that movement so far as to take the 20 cars three miles onto the main line at Kolsem Junction and thence to Blanford Junction five and one-half miles farther on. (We are quoting from the stipulated facts). "They left the 20 cars standing on the main line, detached the engine and ran the engine into Bogle Mine to get five cars of coal which were billed to Muncie, Indiana. It was while the crew were on their way to Bogle Mine to get the five cars of coal for Muncie, Indiana, that the accident happened. While the 20 cars were standing out on the main line a flagman was sent back to guard the rear end of the string of cars, but there was no caboose attached to the cars. It was the purpose and intent of the crew to go to Bogle Mine, pick up the five cars of coal for Muncie, Indiana, return with them to Blanford Junction, couple them onto the 20 cars of company coal * * * and then proceed with the 25 cars to * * * the West Clinton Yard one and one-half miles away."

While handling the 20 cars of company coal, already on their way to a destination outside of Indiana, deceased and his fellow employes were engaged in interstate commerce. The five cars of coal for Muncie, in themselves, had no attribute of interstate commerce. In one view, the crew had stepped aside for the moment

from its interstate activities to pick up the five local cars. Had the interstate character of their employment ceased so that for the time being they were beyond the protection of the Federal Employer's Liability Law? That is the one question for decision.

As so well explained in Illinois Cent. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. ed. 1051, Ann. Cas. 1914C, 163, the question does not go to the power of Congress but the intent attending its exercise. As therein indicated, because of the interdependence and essentially unitary character of our commerce, so far as it is the subject of railroad transportation, there is no longer any doubt that the liability of the carrier for injuries suffered by a member of a switching crew "in the course of its general work," that of handling without distinction both interstate and intrastate cars, at one moment dealing with one and in the next with the other or both, is subject to regulation by Congress "whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce."

But Congress not having exercised its power to the full extent and having extended the Employer's Liability Act (34 Stat. L. 232) only to the employes of interstate railroads while "employed by such carrier in" interstate commerce, the courts having to do with the problem must frequently tear a "seamless web" and make a distinction which is wholly arbitrary and without any basis of reason, other than the legal necessity for its creation.

If we were disposed to draw with a closeness easily possible the line of demarcation between the daily interstate and intrastate functions of the deceased and his crew, it would be easy enough to say that, at the moment of his fatal injury, they were engaged in intrastate commerce, for they were on the way to pick up intrastate cars and nothing else. But, considering the problem in its larger aspect, as we must with a view to effectuating the intent of Congress as expressed by the liability act, we consider that result based upon too narrow a view of the problem, one somewhat miscroscopic in its search for elements of distinction between duties which have to do with interstate and those which concern *exclusively* intrastate commerce.

The crew was engaged in switching operations, although not confined to a terminal or transfer yard. They were assembling in transportation and putting on the way to consignees who would be found indiscriminately, some within and a great many without the state of Indiana, the subjects of commerce.

If we take as a unit for consideration a day's work, it would have to be denominated interstate in character. The same result would attend a much more minute subdivision of the crew's daily functions. For example, up almost to the moment of Effinger's injury they were handling interstate cars. The freight they were assembling and putting on its way, or at least the task of assembling it, was therefore interstate in character. They had just put on the main line 20 interstate cars and for present purposes it matters not that they were no train in the ordinary sense. They may be so termed for convenience, although there was no caboose. If preponderating physical quantities were controlling, it could well be concluded that until that train was disposed of by the crew their functions would remain interstate in character. Did they abandon their interstate functions temporarily but completely when, leaving one member of the crew as a flagman to guard an interstate train on the main line, they went a few miles away to pick up and take back to and into the interstate train the five local cars?

We think not, for the reasons already indicated at sufficient length. From the standpoint of authority, we are of course controlled by the decisions of the Supreme Court of the United States. Otherwise a recent decision of this court (the writer not participating), is nearly if not quite controlling. Schendel v. C. R. I. & P. Ry. Co. 163 Minn. 460, 204 N. W. 552. To us, the attempt to pick up the five local cars and join them in a train with 20 interstate loads does not seem one of a "succession of separate tasks" but rather as a part of the "single and indivisible task" of making up the train and continuing the movement, *both* of which were already initiated and given Federal character by the 20 interstate cars already on the main line, in charge of one member of this crew and waiting only the coming of the five local cars to continue in inter-

state transportation. Erie R. Co. v. Welsh, 242 U. S. 303, 37 Sup. Ct. 116, 61 L. ed. 319. Unlike the switching operation considered in the Behrens case, the one here involved was not a completed interstate function, the crew then turning aside to a new, different and intrastate job. It was rather a part of and step in making up and moving the interstate train. It was not "being done independently of the interstate commerce in which the defendant was engaged," but rather was "so closely connected therewith as to be a part of it," for present purposes, within the reasoning of Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153. Its performance was not "a matter of indifference" to the prompt and economical movement of the interstate cars.

We consider that Effinger, if not at the moment engaged in strictly interstate transportation, was employed "in work so closely related to it as to be practically a part of it" within the "true test" formulated in Shanks v. Delaware L. & W. R. Co. 239 U. S. 556, 36 Sup. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797. On the facts, the case probably most nearly in point is New York C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. ed. 1298, where a brakeman on a "pick-up" freight train, running between points in the same state but carrying some interstate cars, was injured while setting a brake on a local car which had just been cut out of the train and backed onto a siding. It was held that he was employed at the time being in interstate commerce because the setting of the brake was necessary so that the engine might be uncoupled and returned to the train and proceed on its journey. The reasoning applies here, for it was necessary in the interest of the 20 interstate cars for Effinger and the rest of the crew to return with the engine and the five local cars as speedily as possible, there to pick up and proceed with the train and its interstate cars.

Carr was held to have been injured while doing an act "so directly and immediately connected with" interstate transportation "as substantially to form a part or necessary incident thereof." We think Effinger was in the same situation and that the judgment appealed

from is erroneous to the extent that it denied plaintiff a recovery under the Federal law. It is therefore reversed and the case remanded for further proceedings not inconsistent with this opinion. So ordered.