## EMMA J. CROUCH v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

October 28, 1927.

No. 25,900.

**Decedent was engaged in interstate commerce at time of his death.**

1. The evidence sustains a finding that the plaintiff's intestate, a member of a switching crew of defendant which had placed interstate cars on a transfer track, and in doing so found it necessary to remove empty cars which had come to the transfer interstate, and had started to return the empties to the yards whence they went interstate to the home yards of the interstate carrier, was engaged in interstate commerce at the time of his death or in work so connected with it as to be a part or necessary incident of it.

**Verdict for $35,000 sustained.**

2. The verdict is not so large as to require a new trial.

Commerce, 12 C. J. p. 44 n. 15; p. 46 n. 29.
Death, 17 C. J. p. 1350 n. 7.

Defendant appealed from an order of the district court for Dakota county, Schultz, J., denying its alternative motion for judgment or a new trial. Affirmed.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellant.

*Tautges & Wilder,* for respondent.

.[1]Reported in 216 N. W. 234.

DIBELL, J.

Action by plaintiff as special administratrix of Harold N. Crouch, deceased, to recover damages for his death caused by the negligence of the defendant while he was in its employ in interstate commerce. U. S. Comp. St. §§ 8657-8665. There was a verdict for the plaintiff for $35,000, of which $20,000 was apportioned by the jury to the widow and $7,500 to each child. The defendant appeals from the order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

It was stipulated at the trial that if there was evidence to sustain a finding that decedent's death occurred while he was employed by the defendant in interstate commerce the court should direct the jury so to find without a submission of the question as one of fact. The court directed the jury to find that the deceased was engaged in interstate commerce. Negligence causing the death of the decedent is admitted.

There are two questions: (1) Whether the evidence sustains a finding that the deceased came to his death when in the employ of the defendant in interstate commerce; (2) whether the verdict is excessive.

1. The plaintiff bases her claim that the deceased was engaged in interstate commerce principally upon two theories. One is that the ten empty cars with which the deceased was working at the time he was killed were loaded at Louisville, Nebraska, consigned to the Missouri highway commission, came to St. Joseph over the Missouri Pacific, were transported by the defendant to the transfer track at Industrial City, and taken by the Savannah Interurban and unloaded; that they were returned to St. Joseph and routed through Kansas over the Missouri Pacific to Kansas City, Missouri; and that throughout their journey the movement was interstate. The other is that the five cars came to St. Joseph in the same way as the ten; were taken by the defendant and placed upon the track for unloading; that at the transfer track were the ten empties; that to get the five loaded cars on the transfer it was necessary to go through various switching operations; that the empties were then returned to the St. Joseph yards; and that in

any event the work of the deceased on the ten empties was so connected with the movement of the five loaded cars, concededly interstate, that it was a part of interstate commerce.

The decedent was a member of a switching crew of the defendant at St. Joseph, Missouri. The defendant is an interstate carrier running into Missouri, Iowa, and other states. Within the yard limits of St. Joseph and about two miles north is Industrial City. At Industrial City a short track holding eight cars connects the line of the defendant with the Savannah Interurban Railway Company, and is used by the two roads for the interchanging and incidental storage of loaded and empty cars.

The Missouri Pacific Railway Company is an interstate railway traversing Missouri, Nebraska, Kansas, and other states and has a line into St. Joseph. The defendant has switching yards at St. Joseph. The Missouri Pacific has none. Its switching is done under contract with the Union Terminal Company, which has yards a mile or so from those of the defendant. A track connects the two and is used for the interchange of cars.

On August 5, 1925, five coal cars owned by the Missouri Pacific and loaded with sand came over its line from Louisville, Nebraska, to St. Joseph, consigned to the Missouri state highway commission at the transfer track at Industrial City. The Union Terminal Company took charge of them at St. Joseph and later transferred them to the yards of the defendant for transportation to the transfer track at Industrial City. On the morning of August 6 a crew of the defendant took the cars to Industrial City and placed them on the transfer track. It is conceded by both parties that this was a part of an interstate movement.

It was the duty of the crew, if there were empty cars at Industrial City, to return them to the yards at St. Joseph. It had instructions to that effect on the morning of August 6. There were then eight empty cars on the transfer track at Industrial City. Four additional empty cars from the main line of the Interurban company were coupled to the eight empties. The crew opened the switch to the transfer track, coupled to the 12 empties, pulled them out on

the defendant's main line, closed the switch, then moved the string of five loaded cars and 12 empties past the switch onto the main line, disconnected the 12 empties, pulled back the five loaded cars beyond the switch, opened the switch, pushed the five loaded cars onto the transfer track and left them there. It was necessary to make these movements to get the five interstate cars on the transfer. The engine then pulled off the transfer track onto the main line, the switch was closed, the engine coupled to the 12 empties, and the crew started with the engine and 12 empties for St. Joseph. It was necessary to take the empties away. They were blocking the main line. The train moved but a few car lengths when an interstate train of the defendant coming from the north ran into it and the deceased was instantly killed. If there had been no collision the switching crew would have returned to the yards with the 12 empties. The switch engine being disabled, the train from the north pushed them into the yards.

One of the empties was a Santa Fe car, and it was delivered to the Union Terminal Company, the representative of the Santa Fe at St. Joseph. One was a N. Y. C. & St. L. Ry. Co. car, and it was started toward home on August 7 intrastate to Drexel, Missouri. The remaining ten were coal cars belonging to the Missouri Pacific. They had come from Louisville, Nebraska, and had been taken to Industrial City, just as the five cars. They were delivered to the Union Terminal, the representative of the Missouri Pacific, put into a Missouri Pacific train, and billed on August 7 to Kansas City, Missouri. This movement carried them through Kansas.

Whether an employe is engaged in interstate commerce within the meaning of the employers liability act is often a perplexing question difficult of certain determination, and it is so here. In N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 260, 263, 35 S. Ct. 780, 59 L. ed. 1298, the court said:

"Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employe is engaged in interstate business, or in an act which

is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

The ten Missouri Pacific empties had come loaded with sand and gravel to St. Joseph from Louisville, Nebraska, on the first, second, and third days of August, were delivered to the defendant for transportation to the Industrial City transfer, were delivered by it to the transfer, taken by the Interurban, unloaded and returned empty to the transfer track by the Interurban on August 6. Their movement from Louisville, Nebraska, to the transfer at Industrial City was an interstate movement like that of the five cars. After the accident, and on the same day, they were returned to the Missouri Pacific and the next day started for Kansas City, Missouri, by way of Atchison, Kansas.

While railway practice permitted the defendant to use cars returned to its yards, as were the ten, before they were delivered to the Union Terminal for the Missouri Pacific, the practice was to deliver them to the Union Terminal, and the instructions of the Missouri Pacific to the Terminal were to bill them to Kansas City, Missouri, for distribution from there. Stating it otherwise, a jury could fairly find that in general if not universal practice the empty coal cars of the Missouri Pacific were loaded with sand at Louisville, Nebraska, went to St. Joseph, Missouri, over the Missouri Pacific, were carried from there by the defendant to the Industrial City transfer, taken by the Interurban, returned by the Interurban to the transfer at Industrial City, then taken by the defendant and delivered to the Missouri Pacific at St. Joseph and by that company transported as empties to Kansas City, Missouri, through Atchison, Kansas, and that their journey was there ended. They were then home and at rest until a new movement was originated. This is just what was done in the case of the ten cars. What was done with the five we do not know. We have no account of them after they were put upon the transfer. Their tracing is not important.

One contention of the plaintiff is that the movement of the cars, starting with the loaded cars at Louisville, Nebraska, and ending with the return of the empty cars to Kansas City, Missouri, was an

interstate movement. For the purpose of the plaintiff's action it is enough if the movement was interstate until the empties were returned to the yards at St. Joseph.

While we are inclined to accept this view, we are better satisfied with the plaintiff's second contention. That is that the decedent's employment with the empties was so connected with the five interstate cars, though it be held that the empties had lost their interstate character, that he was engaged in or definitely connected with interstate commerce so that his work was to be deemed a part of it. Putting it in another way, the contention is that the work of the decedent was so connected with the movement of the five interstate cars "as substantially to form a part or a necessary incident thereof" within the Carr and other cases cited.

The five interstate cars could not be delivered on the Industrial City transfer without taking out the empties. All the various maneuvers, moving the cars back and forth, opening and closing the switch, were made to get the loaded cars onto the transfer and were movements in interstate commerce. When the empties were taken from the transfer they could not be put by the defendant on the line of the Interurban and left there. It had no right to leave them there. They had to be put on defendant's interstate line. They could not be left there. They obstructed and blocked an interstate line on which an interstate train was approaching, as the crew knew.

The court of controlling authority has always considered the question of whether the employe was in interstate commerce as a practical one, each case to be determined largely upon its own facts. The act is construed with fair liberality to the employe. It is our view that whatever was done in taking the five cars from the defendant's yards to the transfer and returning the empties which were interstate cars when they went to the transfer was so connected with interstate commerce as to be a substantial part of it and that it should be held that the train employes are within the purview of the liability act. Pennsylvania Co. v. Donat, 239 U. S. 50, 36 S. Ct. 4, 60 L. ed. 139; N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. ed. 1298; Louisville & N. R. Co. v.

Parker, 242 U. S. 13, 37 S. Ct. 4, 61 L. ed. 119; Shanks v. Delaware, L. & W. R. Co. 239 U. S. 556, 36 S. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797; Healy v. C. M. & St. P. Ry. Co. 164 Minn. 353, 205 N. W. 260.

Again the plaintiff argues that when the empties were placed upon the interstate track of the defendant, as a part of a necessary way of getting the five interstate cars on the transfer, the interstate track was then blocked or obstructed, and whatever was done in removing the obstruction, that is, in getting the cars to the St. Joseph yards, was done to make the main line safe for interstate commerce, and that the men employed were within the cases of which Southern Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. ed. 1321, Ann. Cas. 1918B, 69, may be taken as typical. In view of the conclusion reached we attempt no analysis of this contention.

We have examined and considered all the cases cited. It would serve no useful purpose to discuss them in detail.

2. The defendant claims that the verdict is excessive. The deceased was 32 years old. His widow was 30 years old. One child was five years old and the other was three. His average earnings were $190 per month. He was an industrious and a faithful employe. He was strong and healthy. He provided well for his family.

The verdict is large. It is perhaps the largest in a death case which we have had occasion to review. In some jurisdictions larger verdicts have been sustained. A comparison of verdicts is not satisfactory. The character of the deceased, his age, his earnings and prospects, and the number and situation of his dependents, all enter as factors, and there is a permissible difference of judgment among juries. There cannot be a standard verdict. The trial court approved the amount. Without further reviewing the facts and without discussing the cases we sustain the verdict.

Order affirmed.