## JAMES F. McDERMOTT, APPELLEE, V. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED APRIL 14, 1933. No. 28359.

*Wymer Dressler, Robert D. Neely* and *Hugo J. Lutz,* for appellant.

*Brome, Thomas & McGuire* and *G. H. Seig, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

The plaintiff, who is appellee, was injured while in the employ of the defendant railway company, appellant, an interstate carrier. He brought suit in Douglas county under the federal employers' liability act, and recovered. judgment, from which defendant appeals.

The evidence relating to the issue as to whether the plaintiff was engaged in interstate transportation at the time of his injury is not in dispute. It was all offered by plaintiff and consists of the testimony of plaintiff and members of the switching crew and clerk of the defendant company.

Plaintiff for many years had been employed as a member of a local switching crew at Missouri Valley, Iowa, (a junction point) whose duty it was to break up and

make up trains and other incidental work of switching in said yards. The crew on the day of the injury went on their regular eight-hour shift at 4 o'clock p. m. and worked until midnight. The yards at that place are quite extensive, some of the side-tracks are north and some south of the main double track. During that day and evening several freight trains entered the yards, each of which contained both interstate and intrastate cars. On arrival of these various trains, the engine was detached, and the switching crew took the way car or caboose and placed it on a side-track provided for that purpose, then the switching crew broke up the train and placed the cars where designated by the yard clerk. When a train arrived in the yards a clerk went over the train and marked each car with some symbol in chalk, which showed what disposition was to be made of each car, and the switching crew followed those directions in breaking up the train and placing the cars where they were to be placed. Some of the cars were placed on side-track in train formation to be later moved out of the yards. The car on which the accident occurred was an empty C. & N. W. flat-car, billed from Dunlap, Iowa, to Missouri Valley, Iowa, came in on train No. 47, which contained both interstate and intrastate cars. This car was marked to be placed on the material track for use in loading material; the kind or purpose or time of loading is not disclosed. About 11:25 p. m., and after the switching operations on most of the trains had been completed, the flat-car mentioned and an empty C. & A. box-car, billed from Sioux City, Iowa, to Grand Junction, Iowa, in care of M. & St. L., were in a string of cars, some interstate cars, and were shoved into side-track to where they were wanted and the engine left them there. Plaintiff was on that string and made a coupling of those cars, and started back to rejoin the crew, where they had gone after spotting the string of cars. Plaintiff crossed over to the north yard toward the engine, which was going over a highway crossing, to go to the north-side tracks. The engine had two cars on it, the flat

and the C. & A. box-car. While plaintiff was walking back from where he had last made the coupling on the string of cars on track 3, the crew spotted the C. & A. empty box-car on the house track about 200 feet from where the accident occurred. This left only the flat-car attached to the front of the engine. The rest of the crew backed the engine and the flat-car over the Ninth street crossing, and no other switching was done, until the accident happened. The plaintiff walked from where he had made the coupling of that string of cars that had been shoved and left on track 3, about 1,500 feet, to where the engine and flat-car were stationed, preparatory to making a flying switch to place the flat-car on the lard track which was used as a storage track. The engine and flat-car had just started to back up when plaintiff climbed upon the flat-car to manage the brake, and after gaining a speed of 10 or 12 miles an hour the flat-car was uncoupled from the engine, which accelerated its speed so as to cross the switch before the flat-car reached it, and thus throw the switch to shunt the flat-car onto the lard track. The engine, through some misunderstanding of signs, stopped on the switch and the flat-car collided with the engine and plaintiff sustained an injury. He was able to go on with his work and the flat-car was placed on the lard track. The next movement of the crew was to go to the stock-yards, get an intrastate car of cattle and leave it on the main line in front of the depot. They then went to train 306, which had arrived at 11:15 p. m., and moved it back up the main line in front of the depot. At that time the crew went off duty. It does not appear that the movement of the empty C. & A. box-car to the house track or the setting of the flat-car on the lard track was necessary to clear tracks for the movement of interstate cars or to place interstate cars so as to facilitate interstate transportation, nor was any interstate haul interrupted or affected.

At the close of plaintiff's testimony, the defendant asked the court to direct a verdict for it, or to discharge the jury and dismiss plaintiff's action, for the reason that the evidence was insufficient to prove that plaintiff was engaged in interstate transportation when injured. The court denied the motion and a like one at the close of all the evidence. The court instructed the jury as a matter of law that the plaintiff at the time of the injury was engaged in interstate commerce. The denial of defendant's motion for nonsuit and that instruction of the court are alleged as error.

The appellee claims that so long as plaintiff, as a switchman, was engaged in the business of breaking up and reclassifying the freight cars in trains 46, 47 and 48 he was employed in interstate commerce and entitled to the benefits of the federal employers' liability act. The defendant contends that plaintiff was not engaged in interstate transportation at the time of his injury, nor in work so closely connected therewith as to be practically a part of it, and further that defendant was not engaged at that time in interstate transportation.

"The test of whether an employee of a railway company is subject to the federal employers' liability act is: Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" *Hensley v. Chicago, St. P., M. & O. R. Co.*, 118 Neb. 690. The state courts are bound by the interpretation of the federal act given by the federal courts. In the opinion it is said: "Those railway employees who are engaged in working upon any instrumentality that is not, at the time, engaged or being used in interstate traffic are generally without the statute."

The United States supreme court in *Illinois Central R. Co. v. Behrens*, 233 U. S. 473, decided that congress in enacting the federal employers' liability act has confined the liability imposed by that act to injuries occurring to employees when the particular service in which they

were employed at the time of the injury is a part of interstate commerce. In *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, that court laid down the rule that it is essential the employee at the time of the injury is engaged in interstate transportation, or in work so closely related to it as to be practically a part of it, to bring a case within the statute. That court in *Chicago & Eastern Illinois R. Co. v. Industrial Commission*, 248 U. S. 296, affirmed the principle announced in the *Shanks* case. In the *Behrens* case, a fireman, member of a switching crew, was killed while at his post of duty. The crew handled interstate and intrastate traffic indiscriminately, frequently moving both at once, and at times turning directly from one to another. At the time of the injury, the crew was moving several cars loaded with freight which was wholly intrastate, and upon completion of that movement was to have gathered up and taken to other points several cars as a skip or link in their transportation to destinations within and without the state. The opinion states: "At the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

The case of *Rogers v. Canadian Nat. R. Co.*, 246 Mich. 399, arose where an employee was engaged in moving to a railroad yard empty freight cars which had finished their interstate service and had not entered on any other movement and were awaiting routing. Such cars, the court held, were not engaged in interstate commerce during switching operations. While the facts in that case are not parallel with this case, the court announced the rule that the character of these cars as instruments of

commerce, interstate or intrastate, depended upon the purpose of their movement at the time of the accident. Also, it is therein stated: "The cars were engaged in interstate commerce until they reached the destination to which they were consigned, and then ceased to bear such character until billed or designated for return."

In *Phillips v. Union Terminal R. Co.*, 328 Mo. 240, the plaintiff, a switching foreman, was engaged in switching cars containing both state and interstate commerce. He had been directed to deliver certain interstate cars to the Great Western yards, and in order to facilitate the movement of those cars he cut off three empty coal cars and left them on another switching track. He and the crew then returned to the three empty cars for the purpose of spotting them at a place to be loaded with sand. The court held he was not engaged in interstate commerce.

In *Mayor v. Central Vermont R. Co.*, 26 Fed. (2d) 905, the court announced: "Injury to employee during switching operations, by which car in intrastate commerce was moved by engine disconnected from interstate train, for purpose of shifting the intrastate car to a siding of its consignee, held not within federal employers' liability act (45 U. S. C. A. secs. 51-59, Comp. St. secs. 8657-8665), because not occurring in interstate commerce, though engine and car were subsequently joined to interstate train and proceeded together for some distance, and switching movement was interrupted by placing entire train on siding, so as to permit the passage of another interstate train." See, also, *Wise v. Lehigh Valley R. Co.*, 43 Fed. (2d) 692; *Illinois Central R. Co. v. Peery*, 242 U. S. 292; *Grigsby v. Southern R. Co.*, 3 Fed. (2d) 988; *Chicago & Eastern Illinois R. Co. v. Industrial Commission*, 284 U. S. 296.

Applying the principle decided in those cases, it follows that plaintiff was not, at the time of his injury, engaged in interstate transportation, nor in work so closely related to it as to be practically a part of it, nor was the defendant so engaged.

Plaintiff contends the distinction in this case is that, as the flat-car had come in on train 47, and the crew was engaged in breaking up trains 46, 47 and 48, and the flat-car which was a part of this movement had not been completely delivered and could not be completely delivered as a part of that movement until it reached its place on the lard track in the yards, for which it was marked at the time the movement to break up the interstate train was initiated, and until the flat-car reached such place the crew was still engaged in interstate commerce.

It has been repeatedly held that a car loses its interstate character as soon as it reaches its destination. The car here involved can only be designated as interstate while it was a part of the train that conveyed it into the yards at Missouri Valley, to which place it was billed. As soon as it reached there, it no longer had any interstate character. It was switched back and forth as a matter of convenience in handling while breaking up train 47, and other trains, and if the injury had occurred while it was so attached to interstate cars probably that would bring the plaintiff within the act. But the breaking up of those trains was completed. The last act of plaintiff before the injury was to set the coupling on a string of interstate cars. He then walked a distance from that place to where the rest of the crew were ready to switch the flat-car. When he began his duties again at the flat-car there was no further work, either proximate or remote, to be done by the crew with interstate cars before the flat-car was to be switched. Appellee cites many cases, among them *Stewart v. Wabash R. Co.*, 105 Neb. 812, where a switching crew took some cars to a Y in order to clear a main track for a passing interstate train. This court held that fact, in connection with other circumstances, brought the injured employee within the act; so, too, in *New York Central & H. R. R. Co. v. Carr*, 238 U. S. 260, where a brakeman was injured while setting brake on an intrastate car, which had been

cut out of an interstate train, where the setting of the brake was necessary in order that the engine to which the car was attached might, when uncoupled, return to the train and proceed on its journey; and in *Youngstown & Ohio R. R. Co. v. Halverstodt*, 12 Fed. (2d) 995, a condition existed similar to the *Carr* case; and a similar state of facts was applied in *Healy v. Chicago, M. & St. P. R. Co.*, 164 Minn. 353, where injury to an employee happened when a crew left interstate cars and went a few miles to pick up intrastate cars which were intended to join and move on with the interstate cars. Other cases are cited, but in each instance the injured employee was engaged in doing some act which assisted or facilitated the movement of interstate transportation, or as has been stated of such cases: "It was not a matter of indifference to the prompt and economical movement of interstate cars."

There are several other errors alleged by appellant, but it is unnecessary to advert to them, inasmuch as the case must be reversed and dismissed because plaintiff did not bring himself within the federal employers' liability act.

The judgment is reversed, with direction to dismiss plaintiff's action.

REVERSED.