### GILES v. CHICAGO GREAT WESTERN RY. CO.
Civil Action No. 1332.

District Court, D. Minnesota, Third Division.

June 18, 1947.

494

Robert McDonald, of Minneapolis, Minn., for plaintiff.

Paul J. McGough and Wright W. Brooks, both of Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

This action was commenced by plaintiff to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of Clyde T. Eastman, during the course of his employment by defendant in interstate commerce.

Defendant admitted liability, and the only dispute was the amount of damages to which plaintiff was entitled under said Act.

On January 30, 1947, Clyde T. Eastman was employed by defendant as a section laborer. On the morning of said date he was directed by defendant employer to board its locomotive No. 720 and proceed from Rochester, Minnesota, to Alta Vista, Iowa, to assist in moving one of defendant's trains, which became stalled in a snow drift. Eastman was required to stand on the cab floor of the locomotive. Arriving at Alta Vista in a blizzard, the locomotive in which Eastman was riding collided with the rear end of said train at 12:11 p. m. on said date. As a result, live steam escaped into the cab, causing Eastman to sustain first, second and third degree burns, covering about sixty per cent of the surface of his body. Despite this, he was able to crawl through the cab window and walk a considerable distance in deep snow to defendant's depot. Here, together with several other injured employees, he reclined on the floor and was given first aid treatment, following which he was re-

moved by ambulance, at about 3:30 p. m. on said date, to St. Joseph's Hospital at New Hampton, Iowa. From the time of the collision up to the time he was admitted to said hospital Eastman was conscious and in great pain. During this time he was constantly requesting drinks of water. He was attended by physicians at the hospital who performed a necessary operation involving debridement and cleaning of the burned areas. This was followed by the application of pressure bandages and medication. Penicillin and morphine were administered. He sustained considerable shock incident to exposure which, together with the serious injuries, caused his death at 6:30 a. m. on January 31, 1947.

During the year 1946, the deceased employee earned $1753.71. With the exception of deductions under the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., and about $3 per month for spending, he contributed all of his earnings to his wife. He expended very little money for clothes and other living expenses. His expectancy of life, according to defendant's exhibit, was 34.63 years, and the joint expectation of life of said employee and his widow, according to the same exhibit, was 27.02 years.

Plaintiff was duly appointed administratrix of the estate of Clyde T. Eastman. The case was tried to a jury, which returned a verdict of $45,000 for pecuniary loss to Eastman's widow and five children, whose ages ranged from one to seven years, and an additional $6,000 for decedent's conscious pain and suffering.

Defendant moved for a new trial on the following grounds:

1. That said verdict is not justified by the evidence.

2. That said verdict is contrary to law.

3. Errors of law occurring at the trial and duly excepted to at the time by defendant.

4. Excessiveness of the verdict of the jury in assessing plaintiff's damages in the sum of $45,000 for pecuniary loss to the beneficiaries.

5. Excessiveness of the verdict of the jury in assessing damages for decedent's conscious pain and suffering in the further sum of $6,000.

Defendant's argument is almost entirely directed at the claimed excessiveness of the verdict. Error is assigned to the introduction in evidence by plaintiff of a mortality table known as the United States Life Tables. Defendant had introduced the American Experience Table of Mortality.

With reference to the mortality tables, the court charged the jury as follows:

"In order to assist the jury in making an estimate of what constitutes a fair recompense for the pecuniary loss sustained by the widow and children, expectancy tables showing the average duration of life at the decedent's age, and the present value of a dollar were received in evidence. This testimony was received as an aid to the jury. It does not constitute an absolute guide that must be literally followed. You are not required to make a computation in accordance with the doctrine of life expectancy or any other mathematical measurement. The amount awarded in this case should be one that this jury in good conscience has determined in accordance with its judgment from the evidence as will fairly compensate the widow and children for pecuniary loss sustained.

\* \* \* \* \* \*

"The mortality tables are not binding upon you. They are merely received as an aid to the jury. You have a right to consider the occupation of Mr. Eastman as a railroad section laborer and the hazards and rigors which may be connected with that employment, and furthermore that railroading is a hazardous occupation, and consider those factors and circumstances insofar as they may have any bearing upon his life expectancy. It is the contention of the parties that the respective mortality tables used by them in this case furnish some evidence of the probable duration of Mr. Eastman's life had he not met death as disclosed by the evidence in this case, and that such expectancy should be considered in computing the amount of pecuniary loss which his dependents have sustained."

■ It has long been law that standard mortality tables showing the probable duration of life are competent evidence to aid the jury in estimating what constitutes the pecuniary loss sustained by the widow and children in cases of this type. Vicksburg & M. R. Co. v. Putnam 118 U.S. 545, 7 S. Ct. 1, 30 L.Ed. 257; Pierce v. Tennessee Coal, Iron & R. Co., 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591; United Verde Extension Mining Co. v. Koso, 9 Cir., 273 F. 369; Chicago & N. W. Ry. Co. v. Candler, 8 Cir., 283 F. 881, 28 A.L.R. 1174.

■ Defendant argues that it was error for the court to charge that the jury should consider the care, attention, instruction, training, advice and guidance which the deceased employee would have given his children if he had not met with his untimely death. The charge as given in this respect was proper. See: Norfolk & Western Ry. Co. v. Holbrook, 335 U.S. 625, 35 S.Ct. 143, 59 L.Ed. 392; St. Louis & S. F. R. Co. v. Duke, 8 Cir., 192 F. 306.

Was the verdict excessive? The deceased employee at the time of the accident was thirty years of age. His widow was twenty-seven years of age at that time, and the children's ages ranged from one to seven years. That the employee suffered conscious pain is not denied, and there is no way of measuring this in dollars and cents. He was a man of exemplary habits and while he was not educated beyond the eighth grade, he was everything to be desired as a husband and father for a man in his station in life.

■ The verdict is a large one, as compared to verdicts returned in Minnesota for wrongful death, but the court must not substitute itself for the jury in determining what the proper measure of damages should be in this type of case. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S. Ct. 409, 88 L.Ed. 520; Simpson v. Pennsylvania Ry. Co., D.C., 55 F.Supp. 652; Peters v. Great Northern Ry. Co., D.C., 66 F.Supp. 385.

■ Defendant urges that Jennings v. Chicago, R. I. & P. Ry. Co D.C.Minn., 1930, 43 F.2d 397, is controlling here. Verdicts in other cases are not of much value as criteria in appraising the result reached in the instant case. Permissible differences in arriving at verdicts must be allowed between juries. The economics of the situation in the particular period involved should be considered. The amount of the verdict must be viewed in the light of what it is capable of purchasing. Chesapeake & O. Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F, 367. As said by the court in Crouch v. Chicago Great Western R. Co., 172 Minn. 447, 216 N.W. 234, at page 237:

"The verdict is large. It is perhaps the largest in a death case which we have had occasion to review. In some jurisdictions larger verdicts have been sustained. A comparison of verdicts is not satisfactory. The character of the deceased, his age, his earnings and prospects, and the number and situation of his dependents, all enter as factors, and there is a permissible difference of judgment among juries. There cannot be a standard verdict."

■ From the very outset in the trial of this case, court and counsel were all conscious of the possibility of sympathy influencing the jury. Nothing was said or done during the course of the trial to inflame the minds of jury to passion and prejudice.

Considered from every angle of the case, I cannot say that the verdict is excessive.

Defendant's motion for a new trial is denied, and an exception allowed.