**MERCHANTS' & MINERS' TRANSP. CO. v. NORTON et al.**

District Court, E. D. Pennsylvania.   April 16, 1929.

On Motion for Reargument, May 10, 1929.

No. 4803.

514

L. C. Krusen, of Philadelphia, Pa., for plaintiff.

Swartz & Campbell, of Philadelphia, Pa., for defendant Zachariasen.

G. W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant Norton.

DICKINSON, District Judge. There are several of these cases. The features which are in common may be discussed in one opinion.

### The Zachariasen Case.

### Fact Findings.

Vigo A. Zachariasen was in the employ of the complainant on an hour compensation basis. He was by trade a machinist, but his work was amphibious, and performed when and where on land or sea as directed. He lost his life August 13, 1928, by drowning when in the performance of the duties of his employment. He had been directed to go aboard the steamship Tuscan to repair a dynamo. The ship was in dock, moored to a pier. He had occasion in the course of his employment to go from the ship to the pier. The distance from ship to pier was about three feet. Access from pier to ship was provided by a ladder. The ship end of the ladder was at the time the higher. The descent was in consequence made by a backward, downward movement on the ladder. As he was getting off the last rung, the ladder tilted or was in some way displaced, so that he was precipitated into the water and was drowned.

On October 18, 1928, a petition was filed by the widow, claimant, for compensation for decedent's death under the Longshoremen's and Harbor Workers' Act (33 USCA §§ 901–950), to which the present plaintiff made answer, raising, inter alia, the question of the jurisdiction of the United States Employees' Compensation Commission. The defendant, deputy commissioner, heard the parties, and following this filed a compensation order. The plaintiff, under the procedure outlined in the act of Congress, has filed this bill, praying that the enforcement of the above order be restrained.

The pertinent act of Congress was approved March 4, 1927. This calls for an analysis of it. Approaching the subject from the point of view of the old law, the mischief, and the remedy, we have the thoughts (1) that compensation for injury or death could before the act be recovered on the basis of the doctrine of negligence; (2) that in maritime employments an injured seaman had the right to maintenance and cure; (3) that in admiralty redress could be afforded only in matters maritime; and (4) that the general law maritime is beyond the control of the state law.

The evils thought to exist were that under some state laws there came to be afforded compensation to workmen employees not based upon the doctrine of negligence, but that of a loss sustained. This, however, did not extend to those in purely maritime employments, thereby creating an inequality. It was thought that the benefits of such compensation should be extended to maritime employments. In other states no such indemnity legislation existed, and there were employments so amphibious in character that a question arose of whether at a particular time the work being done, although maritime, was so far local as that the state law would apply. The remedy was dictated by the thought that, if the state law indemnified the workman for injuries, no added legislation was needed; but, if compensation was not given by the state law, it should be given by act of Congress. Ignoring impertinent features, the act of Congress provided for indemnity compensation to workmen who suffered injury upon the navigable waters of the United States, including dry docks, but the operation of the act is halted in any given case "if recovery for the disability or death through workmen's compensation proceedings" is "validly provided by state law."

The right of recovery in the instant case is thus dependent upon three findings (ignoring features not in controversy): (1) The affirmative one that the death resulted from an occurrence "upon navigable waters"; (2) the negative one that the laws of

Pennsylvania do not "validly provide" for workmen's compensation of which the claimant might avail herself; and (3) that the claimant before the commissioner is the rightful claimant. The commissioner has made all of these findings in favor of the claimant by making an order in her favor.

### Discussion.

The findings of the commissioner necessarily mean that the decedent had not left the ship, in the sense of having reached the land, when he met his death, and that his employment was on shipboard, and that the claimant is his widow and the proper beneficiary of the order of compensation. This act of Congress gives what may be called a new right of action, in the sense that it makes a cause of action of what before the act would not have so been. Broadly stated, it extends to those in maritime employments the benefit of the so-called employees' compensation doctrine under which the receipt of compensation is based upon the fact of employment and the fact of injury. All laws which apply this doctrine call for the creation of machinery which grinds out in the first instance the facts upon which the right to compensation depends.

The appellate revision by the courts is restricted to the question of whether the order has been made "in accordance with law." The facts must thus be assumed to be as found. This reduces the controversy presented to one of whether the benefits of a like law have been, "validly provided by a state law." Broadly stated, they have. This further reduces the question to one of the conflict of the state law with that of the law maritime. The test of this is in the application of two propositions: (1) That the law maritime must be preserved in its integrity, unaffected by state legislation; but that (2) a state law, relating to the subject of the relations and liabilities of employers and employees, which is of local application only, and which does not affect the general law maritime, may operate with it.

The final question thus becomes whether the Pennsylvania statute has this local characteristic in employments such as that of the decedent. When it is recalled that one of the statutes to be construed is a statute of the United States, and the other a statute of Pennsylvania, and that the test of a cause maritime, with which the law of the United States concerns itself, is that the injured workman was on, and had not left, the ship, and that his location at any time is a matter with which ordinarily the law of the state does not concern itself, it is not surprising that the judgments of the courts of the two jurisdictions may differ in cases presenting the same state of facts. The meaning of the state law must be taken to be what the state courts have declared it to be. The courts of the United States must declare the meaning of an act of Congress. The integrity of the law maritime is necessarily in the keeping of the courts of the United States.

The real question thus becomes one which does not lend itself to expression in a phrase. There may be a state law which applies to all employments indifferent to their character. A particular employment might, however, be purely maritime, which the state law could not affect. There may likewise be a state law which applies to employments, although maritime, of such local interest only as that the state law may be applied to them, without affecting the general law maritime. The plaintiff confidently asserts two propositions: (1) That the state law (Pa. St. 1920, § 21916 et seq.) does apply to the employment now under consideration; and (2) that this state law is so far local in its application and effects as that it may be in existence and enforced alongside of and along with the law maritime. For both of these propositions the cases of Span v. Accident & Guarantee Corp., 92 Pa. Super. Ct. 418, and Miller's Indemnity Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470, are cited. Upon a cursory reading of these cases it would be gathered that the Pennsylvania Compensation Law applied in the instant case, and in consequence that the United States statute was by its terms inoperative. When, however, these cases are read in the light of Northern Coal & Dock Co. v. Strand, 278 U. S. 142, 49 S. Ct. 88, the cases referred to above may be given a wholly different meaning.

In the Braud Case, for illustration (in which the state law statute was held to be applicable), the locality of the happening was not, in the words of the act of Congress, "upon navigable waters." The decedent there was at the time at the work of sawing off timbers which were (although under water) on land belonging to the state. In the Strand Case, the workman was injured while working on a vessel which was then in navigable waters. In the former case the state law was held to be applicable, and as not in conflict with the operation of the law maritime; but in the latter case the ruling was otherwise.

The contrast of these two rulings, or rather the contrast of the different fact situ-

ations presented, gives us the key or test by which we can determine whether the state law is, in the sense in which we have been considering it, a "valid" law or not. Applying this test to the fact situation presented in the case before us, we are led to the conclusion that the instant case is one of the Strand and not the Braud type.

This means that the bill filed by the plaintiff should be dismissed, and an appropriate decree to this effect, with an allowance of costs, may be submitted.

### Sur Motion for a Reargument.

An opinion has already been handed down in this cause, but, as no formal decree has been entered, leave was granted to file a motion for a reargument, with the understanding that the questions arising in the cause might be reargued on the pending motion, and the motion for a reargument allowed or refused, and in the latter event the conclusions revised, as it might be found they should be.

Underlying this cause, and perhaps overriding the interests of the parties, are two subjects, one of which is of grave and far-reaching importance to the public; the other, of practical bearing upon the rights of the parties. One is the relations of state to nation, to which every citizen owes a dual allegiance; the other is the danger that, although state and nation each allow compensation to an injured employee, he may lose the benefits of either in the settling of a controversy over which law applies. Out of the latter grows a natural impulse to uphold, if it can be done, the application of that law which has been invoked. The result is that any undue leaning toward giving the state law operation in one class of cases, or the act of Congress in the other, may render some of the ruled cases difficult to reconcile with others.

The real basis of the reargument is to have the court review its reading of the Strand Case, 278 U. S. 142, 49 S. Ct. 88, 73 L. Ed. ——. All are agreed that the mere fact that the cause is a cause maritime, although of course an element, is not in itself the test of which we are in search. The Strand Case, as we read it, emphasizes several features of the case to be ruled.

(1) The question of whether the thing being done is a "matter of purely local concern."

(2) The fact that the employee "worked for the major portion of the time upon the land is unimportant."

(3) The question of whether the employee "was upon the water in pursuit of his maritime duties when the accident occurred."

(4) To these the concurring opinion adds as elements the questions of whether the employer "owned or controlled ships," whether its business had any "connection with maritime affairs," and whether the employee's "regular work was nonmaritime," with only a small part of his time spent on ships.

The thing being done in the Strand Case was the unloading of the ship; here it was being done in the repair and maintenance of the equipment of the ship. There it was held that the unloading of a ship had "direct relation to commerce and navigation." The keeping of a ship fit, as here, would seem to have the like relation. There the fact that the employee "worked for the major portion" of his time upon land was held in the majority opinion to be unimportant. Here there was the like fact, although here the whole of his work was performed on the ship, although it is true that the work did not take a very long time in connection with this particular ship. The duration of the employment, so far as it was maritime in its nature, is nowhere suggested to be the test of whether it was "purely local." The minority opinion, however, suggests as one test the question of what was "the employee's regular work." A further test suggested in the minority opinion, which may be interpolated here because of its bearing upon the question of the "regular" work of the employee, is the nature of the business of the employer. In the Strand Case, the business of the employer was a land business, having nothing maritime in its nature, except the circumstance that it sometimes made shipments by water, and maintained a dock or pier to facilitate such shipments, and presumedly the delivery of such supplies as came to it by water. Here the business of the employer is maritime, and its land operations only incidental. The regular work of the employee may thus be deemed to be maritime, as the repair and keeping fit of its ships was an important, if, indeed, not the chief, and possibly the exclusive, purpose the employer had in maintaining a "repair gang."

Another test element present in the Strand Case was the fact that the employee "was upon the water in pursuit of his maritime duties when the accident occurred." Here there was the like locus of employment, and in addition the mishap was emphatically maritime, for the employee was drowned.

In addition to the comments already made upon the tests suggested in the minority opin-

ion, it may be of value to have in mind the further thoughts (although to some extent a repetition) that in the Strand Case the employer neither owned nor controlled ships. Here the fact of ownership and operation of ships featured largely, if not exclusively, in the business of the employer. In the Strand Case, the business of the employer had no "connection with maritime affairs," while in the instant case the business of the employer had all to do with the sea.

We adhere to the view expressed that the principles of law to be extracted from the Strand Case call for the dismissal of the bill, with costs.

The motion for a reargument is denied.