**WILSON & CO., Inc. v. LOCKE, Deputy Commissioner, Employees' Compensation Commission.**

No. 335.

Circuit Court of Appeals, Second Circuit.

May 18, 1931.

Single & Single, of New York City (James D. Cooney, of Chicago, Ill., and Paul D. Compton, and W. Harry Stromenger, both of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The first assignment of error presents two important questions with respect to the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 901 et seq.), one involving a problem of statutory interpretation, the other involving a problem of constitutional law. Stated specifically, the questions are: (1) Does the statute contemplate a trial de novo by the District Court; (2) if it does not, must it be held unconstitutional under the Fifth Amendment?

The general object of the statute under consideration was to provide compensation to employees included within its provisions and engaged in maritime employment for disability or death resulting from injury occurring upon navigable waters of the United States where recovery through workmen's compensation proceedings could not validly be provided by state statutes. Nogueira v. N. Y., N. H. & H. R. Co., 281 U. S. 128, 131, 50 S. Ct. 303, 74 L. Ed. 754. It sets up administrative machinery similar to that provided by workmen's compensation laws, and specifies procedural details with respect to a hearing by the deputy commissioner at which the claimant and the employer may each present evidence, and an order may be made rejecting the claim or awarding compensation; a copy thereof being sent by registered mail to both claimant and employer. Section 19 (33 USCA § 919). In conducting a hearing the deputy commissioner is not to be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure, but is to so conduct the hearing as to best ascertain the rights of the parties. Section 23(a), 33 USCA § 923(a). The hearings are to be open to the public and are to be stenographically reported, and "the commission shall by regulation provide for the preparation of a record of the hearings and other proceedings before the deputy commissioners." Section 23(b), 33 USCA § 923(b). The deputy commissioners have authority to compel the attendance of witnesses, to administer oaths, to examine witnesses, etc. Section 27, (33 USCA § 927). A compensation order becomes final within thirty days after it is filed in the office of the deputy commissioner unless proceedings to set it aside are instituted. Section 21(a), 33 USCA § 921(a). To collect defaulted payments of compensation and to enforce any compensation order which has become final, resort may be had to the federal courts pursuant to sections 18 and 21(c), 33 USCA §§ 918 and 921(c). Section 21(b) provides for "review of compensation orders": "(b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred. * * *" 33 USCA § 921(b).

Having regard to the general purpose of the act as well as to provisions which expressly disclose an intention to secure promptness in the payment of compensation to an injured employee and those respecting hearings before the deputy commissioner, particularly the waiver of ordinary rules of evidence and the requirement of a stenographic transcript of testimony, we entertain no doubt that the judicial review contemplated by section 21(b) was not to be a trial de novo, but a review on the record made before the deputy commissioner to determine whether his order was "not in accordance with law." Such has been the construction adopted by the courts with almost complete unanimity. Wheeling Corrugating Co. v. McManigal, 41 F.(2d) 593 (C. C. A. 4); Northwestern Stevedoring Co. v. Marshall, 41 F.(2d) 28 (C. C. A. 9); W. J. McCahan Sugar, etc., Co. v. Norton, 43 F.(2d) 505 (C. C. A. 3); Obrecht-Lynch Corp. v. Clark, 30 F.(2d) 144 (D. C. Md.); Merchants' & Miners' Transp. Co. v. Norton, 32 F.(2d) 513 (D. C. E. D. Pa.); Joyce v. U. S. Deputy Commissioner, 33 F.(2d) 218 (D. C. Me.); Grays Harbor Stevedore Co. v. Marshall, 36 F.(2d) 814 (D. C. W. D. Wash.); contra, Crowell v. Benson, 45 F.(2d) 66 (C. C. A. 5).

So interpreted, the statute has been upheld in all the above cases except Crowell v. Benson. The conflicting views as to its constitutionality have been ably presented, on the one side, in the opinion of Judge Parker in Wheeling Corrugating Co. v. McManigal, and, on the other in the opinion of Judge Walker in Crowell v. Benson, now pending on certiorari before the Supreme Court. 51 S. Ct. 353, 75 L. Ed. ——. Since the controversy is soon to be settled by final authority, it would serve no useful purpose for us at this time to review the opposing arguments and set forth the reasons which have led us to the conclusion that the statute is valid. It will suffice to state that we so hold in reliance upon decisions which have declared a limited review of administrative action in somewhat analogous cases to be no denial of due process of law. Hawkins v. Bleakly, 243 U. S. 210, 37 S. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 637; New York Central R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Federal Trade Comm. v. Eastman Kodak Co., 274 U. S. 619, 623, 47 S. Ct. 688, 71 L. Ed. 1238; Tagg Bros. v. United States, 280 U. S. 420, 443, 50 S. Ct. 220, 74 L. Ed. 524; Ma-King Co. v. Blair, 271 U. S. 479, 483, 46 S. Ct. 544, 70 L. Ed. 1046. See 40 Yale L. J. 985; 43 Harv. L. Rev. 131.

It remains to determine whether the testimony taken at the hearing before the

deputy commissioner will sustain his finding that Rohman was in the employ of the appellant at the time of his injury. Concededly he was in the general employ of Wilson & Co. But, pursuant to rule 125 of the Pennsylvania Railroad Company's tariff, an allowance of 15 cents per ton was made to appellant for loading the lighter, and it is contended that, while engaged in loading hides, Rohman was subject to the orders of the captain of the lighter and must be considered to have been "loaned" to the railroad company for this special service, within the principle declared in Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, and Linstead v. Ches. & Ohio Ry., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453. Assuming without decision that under the Longshoremen's and Harbor Workers' Compensation Act this principle may be applied to relieve the general employer from the duty of compensating an injured employee furnished to another for a special service, the evidence is ample to sustain the deputy commissioner's finding that such was not Rohman's status. Goins, who was the assistant foreman of the gang with which Rohman worked, testified on his first examination that Rohman was acting under his orders and that the lighter captain was not to be seen on board at the time. Three months later he testified again and said the captain always directed the men to take off hatch covers, and that the captain was in the hold when the accident occurred. Another witness then testified that the captain gave the order to remove the hatch cover at the time of the accident. Rohman himself, testifying through an interpreter, said that he took his orders from Goins, and that he supposed the captain was an employee of Wilson & Co. The captain was also a witness and testified that he was in sole control of the lighter and had authority to direct where freight was to be placed for the safety of the vessel and cargo, but he was not asked whether he had given any order regarding removal of the hatch cover prior to the accident. The credibility of the witnesses so far as their testimony was in conflict was for the deputy commissioner to determine. He found, as he well might, that Rohman was ordered on the boat by Goins and had taken no orders from the lighter captain. He also found that Rohman considered himself at all times under the direction and control of Wilson & Co., and he correctly applied the rule of law that a servant may not unwittingly be transferred from one master to another. Murray v. Union Railway Co., 229 N. Y. 110, 127 N. E. 907.

The conclusion that Rohman was in the employ of Wilson & Co. at the time of the accident was sustainable on the evidence and the law. Hence the decree below was correct and it is affirmed.